WINTHROP CHEMICAL COMPANY, INC., Respondent, *v.* JACOB BLACKMAN and Others, Appellants.*

First Department, February 7, 1936.

* Affg. 150 Misc. 229.

*Morris Kirschstein*, for the appellants.

*Louis Boehm* of counsel [*Gabriel Rubino* and *S. C. Stember* with him on the brief; *Boehm & Zieger, Edward S. Rogers* and *James F. Hoge*, attorneys], for the respondent.

McAvoy, J.  The proof at the trial established the plaintiff's contention that the use of the terms " Veronal " and " Protargol " in either method employed by defendants was calculated to deceive the public and permit sales of defendants' products as though they were the output of plaintiff.  As to the products " Theobrominal," " Aristol " and " Kre-o-minal," we all agree that the plaintiff's rights are infringed by defendants' user; dissent is expressed only as to the use of the terms " Veronal " and " Protargol."

The names " Veronal " and " Protargol " are not descriptive words or generic terms solely identifying the drugs in question. They represent in effect in their secondary meaning in the trade, products of plaintiff which it is entitled to use exclusively even after a patent has expired, since the other terms have throughout the patent period been applied to the products in question.  There may be instances where an arbitrary name may so identify an article that no other term is its equivalent, but all of these remedies have chemical names apart from their proprietary designations by which they may be purchased and purveyed to the medical profession, by whose members they are usually ordered and prescribed.

It seems to us that the practice of using the words " introduced as " or " equivalent " in conjunction with the plaintiff's trade-marked name, is designed to foist the defendants' product on the buyer without any necessity of so doing in the interest of the public to prevent monopoly.  The cases in which a patent's expiry permits the use of the patented name on another's product apply only where no other term would give it meaning in the public domain. Our conclusion is that the plaintiff was properly granted an injunction and an accounting against both the corporate body and the individual defendants since the latter participated actively in the wrong and were liable as joint actors for carrying out the plan of infringement to the detriment of plaintiff.

The judgment appealed from should, therefore, be affirmed, with costs.

Townley, Glennon and Dore, JJ., concur; Untermyer, J., dissents in part.

UNTERMYER, J. (dissenting in part). I am inclined to concur, though with some hesitation, in the conclusion that the judgment should be affirmed in so far as the use by the defendants of the names "Theobrominal," "Kre-o-minal" and "Aristol" are concerned, none of these products ever having been patented. I entertain serious doubt concerning the propriety of enjoining the defendants from selling their Diethylbarbituric Acid (contracted into "Barbital") as "Veronal" or their Silver Proteinate as "Protargol" for the reason that these compounds were protected by patents and might, therefore, fall within the rule expressed in *Singer Mfg. Co.* v. *June Mfg. Co.* (163 U. S. 169); followed or applied in *Centaur Co.* v. *Heinsfurter* (84 Fed. 955); *Horlick's Food Co.* v. *Elgin Milkine Co.* (120 id. 264); *Linoleum Mfg. Co.* v. *Nairn* (L. R. [1878] 7 Ch. Div. 834); *Hostetter* v. *Fries* (17 Fed. 620); *DeLong Hook & Eye Co.* v. *American Pin Co.* (200 id. 66); *Amiesite Asphalt Co. of America* v. *Interstate Amiesite Co.* (4 F. Supp. 504; affd., 72 F. [2d] 946); *Yale & Towne Mfg. Co.* v. *Ford* (203 Fed. 707); *National Biscuit Co.* v. *Kellogg Co.* (T. M. Rep. vol. 25, No. 3 [March, 1935], p. 102); *Jaffe* v. *Evans & Sons, Ltd.* (70 App. Div. 186); *Wilcox & Gibbs Sewing Machine Co.* v. *Kruse & Murphy Mfg. Co.* (14 Daly, 116). (See, also, Nims on Unfair Competition [3d ed.], p. 545; 26 Am. & Eng. Ency. of Law [1st ed.], p. 316.) I am, however, not prepared to dissent in this respect because it may be contended that the question presented involves to some extent controverted issues of fact upon which the determination of the trial court ought not to be disturbed.

I dissent from what appears to me to be the more important principle that the defendants may not, in offering these two products to the public, represent that in chemical composition they are equivalent to "Veronal" and "Protargol." In this connection it is to be remembered that the defendants are not selling these two products as "Veronal" or "Protargol." The precise form in which they sell the former is "Barbital (Introduced as Veronal)" and the latter "Silver Proteinate (Introduced as Protargol)," preceding and following these with the characteristic name under which the defendants' products are sold. Instead of "Introduced as Veronal" the defendants have sometimes used the phrase "Veronal Equivalent" as indicating that the "Barbital" which they sell is of the same composition as "Veronal."

The trial court has enjoined all these practices and has included in the judgment a provision restraining the defendants from using not only the phrase "Introduced as Protargol" and "Introduced as Veronal," but also the phrase "Veronal Equivalent," "or any phrase similar thereto" upon any of the defendants' labels or in

any of their advertising matter. The effect of this is to prevent the defendants from competing with the plaintiff by any statement to the public that their products, though sold at lower prices than the plaintiff's, are the same in composition. It is particularly from the affirmance of so much of the judgment appealed from that I dissent.

I know of no principle of law or commercial honesty which prevents a manufacturer from representing his product to be " as good as " or " equivalent to " the product of another, provided he does not misrepresent the source or origin of manufacture. Such decisions as I am able to find fully sustain this statement of the rule. (*Prestonettes, Inc.,* v. *Coty,* 264 U. S. 359; *Irving's Yeast-Vite, Ltd.,* v. *Horsenail,* 103 L. J. Ch. 106 [1934]; 51 R. P. C. 110, decided by the House of Lords; *Fairbanks* v. *Jacobus,* 14 Blatchf. 337.) In the case first cited it was said: " When the mark is used in a way that does not deceive the public, we see no such sancity in the word as to prevent its being used to tell the truth. It is not taboo." In the present case and in many similar cases which are certain to arise this question assumes great importance, because " Veronal " and " Protargol " were protected by patents, which, of course, precluded all competition by others for a long period of time. Under the protection of those patents the plaintiff was afforded an opportunity to popularize the names " Veronal " and " Protargol " in connection with the chemical compounds which were offered for sale. It is hardly to be imagined that the public knew or will ever know that " Veronal " is diethylbarbituric acid and that " Protargol " is silver proteinate. Consequently, on the expiration of such patents no manufacturer can compete with the plaintiff, unless he may at least inform the public that his product, though manufactured by a different firm, in chemical composition is the same as the product which, theretofore manufactured under the protection of a patent, has become generally known by a particular name. Why then should he not be able to disclose the fact that the properties of the product which he places on the market are equivalent to the properties of the product which has been manufactured by a competitor under a different name? If he may not do this, then for all practical purposes the patent right becomes perpetual wherever the patentee has designated his product by any arbitrary name.

The defendants have attempted to inform the public that the products " Barbital " and " Silver Proteinate " manufactured by them are the same in composition as the plaintiff's " Veronal " and " Protargol," by the statement that these drugs were " Introduced as Veronal " and " Introduced as Protargol." This form of state-

ment appears to have been initiated by the Federal Trade Commission during the war with Germany, when " Veronal," originating in Germany, was seized and licensed to be sold by the United States government. None the less there may be some danger of confusion in this form of statement, because some purchasers may assume that " Barbital " had been " Introduced as Veronal " by the present manufacturers of " Barbital." There can be no confusion, however, in the statement that " Barbital " is a " Veronal Equivalent," as concededly it is. I perceive no reason, therefore, to enjoin the defendants from the sale of " Barbital " or " Silver Proteinate " coupled on their labels or in their advertising material with the statement that it is the equivalent to " Veronal " or " Protargol," or with words of similar import. To that extent I dissent from the decision of this court.

I also dissent from so much of the decision of this court as directs an accounting by the individual defendants by whom the products were not sold.

The judgment should be modified accordingly.

Judgment affirmed, with costs.