Goodyear Rubber Co. *v.* Goodyear's Rubber Mfg. Co. and others.

*(Circuit Court, S. D. New York.   August 15, 1884.)*

1. TRADE-NAME—RIGHT OF CORPORATION TO ACQUIRE—INFRINGEMENT BY ANOTHER CORPORATION.

   A corporation may acquire a property right to the use of a name other than its original corporate name as a trade-mark, or as incidental to the good-will of a business, as well as an individual; and if it has acquired such a right, it cannot be deprived thereof by the assumption of such name subsequently by another corporation, whether the latter selects its name by the act of corporators who organize under the general laws of the state, or the name is selected for it in a special act by a legislative body.

2. SAME—PRIORITY—EVIDENCE—INJUNCTION—"GOODYEAR RUBBER COMPANY"—"GOODYEAR'S RUBBER MFG. CO."

   Upon examination of the evidence in case at bar, *held*, that the "Goodyear Rubber Company" was entitled to an injunction restraining the defendant from using the name, "Goodyear's Rubber Mfg. Co."

In Equity.

*W. W. MacFarland*, for complainant.

*F. H. Betts* and *Stephen P. Kellogg,* for defendants.

WALLACE, J. The complainant is a corporation organized under the laws of New York, in 1872, by its present corporate name. The defendant is a corporation organized under the laws of Connecticut, in 1847, by its present corporate name. Each corporation seeks to enjoin the other, the complainant by bill and the defendant by cross-bill, from using the name "Goodyear's Rubber Mfg. Co." Both parties concede this name to be practically identical with complainant's name. The parties are competitors in the manufacture and sale of rubber goods, and have their principal places of business in the city of New York. Each insists that it has acquired the right to the use of the name in dispute, and that such name has become a valuable adjunct of its business; and each insists that the other has endeavored and is now attempting, by a wrongful use and appropriation of the name, to divert the custom of the other. As each party concedes that the right to use the name for the purposes of its business is a valuable property right, and asserts that such use by the other is vexatious, embarrassing, and necessarily tends to pecuniary injury, the controversy manifestly resolves itself mainly into a question of title to the name. It is incumbent upon one of the parties to establish a lawful right to use the name as against the other, and the party which does this will be entitled to the relief prayed for.

The name of a corporation has been said to be the "knot of its combination," without which it cannot perform its corporate functions. Smith, Merc. Law, 133. It has neither the right nor the power to change the corporate name originally selected without recourse to such formal proceedings for the purpose as may be authorized by the laws under which it has been incorporated, or by the consent of the authority from which its charter is derived. Nevertheless, it may become known by another name by usage; and the courts have frequently treated acts done and contracts entered into by corporations under another name, as though done or entered into by it with the true name. *Minot* v. *Curtis,* 7 Mass. 441; *South School-dist.* v. *Blakeslee,* 13 Conn. 227; *Eastham* v. *Blackburn Ry. Co.* 23 Law J. Exch. (N. S.) 199; *Boisgerard* v. *N. Y. Banking Co.* 2 Sandf. Ch. 23. There is no reason why a corporation may not acquire a property right to the use of another name as a trade-mark, or as incidental to the good-will of a business, as well as an individual; and, if it has acquired such a right, it will of course be protected in its enjoyment to the same extent as an individual would be. It cannot be deprived of the right by the assumption of the name subsequently by another corporation, and it is immaterial whether the latter selects its name by the act of corporators who organize under the general laws of a state, or whether the name is selected for it in a special act by the legislative body. Manifestly, if the defendant had no right to use the name by which the complainant was incorporated, or one practically identical with it, at the time of the latter's incorporation, the title of the complainant is

clear, because it adopted the name formally, publicly, and legitimately, for all its corporate purposes. The defendant insists that it had acquired a prior right to the use of the name; that this right took its origin as early as 1862, and by a gradual process of development had ripened into a good title before complainant was incorporated.

Neither party makes any claim of exclusive right to use the word "Goodyear" alone, that word having become a generic term of description applied to a large class of India-rubber fabrics before either party became a corporation, or to the word "Goodyear" in combination with "rubber." There were trading concerns called the "Goodyear Metallic Shoe Co.," "The Goodyear Rubber Works," and the "Goodyear Rubber Emporium," before either party claimed the right to the name in controversy.

The defendant's theory, as sustained by the proofs, is that, beginning in 1862, when it ceased to confine itself to the manufacture of gloves, and engaged in manufacturing and selling rubber goods generally, its customers occasionally addressed it in their correspondence by various abbreviated names, such as "Goodyear's Rubber Mfg. Co.," "Goodyear Rubber Co.," Goodyear's Co.," "Goodyear's I. R. Company;" "Goodyear Company," and other abbreviations; that the use of such abbreviated addresses by its customers gradually increased, so that in 1871 the defendant received nearly 200 letters addressed to the Goodyear Rubber Company, and nearly 100 to the Goodyear Rubber Mfg. Co. On the other hand, the proofs show that during this time the defendant received many thousands of letters yearly; that the letters addressed to it by other names were comparatively a small number, averaging not over 500 a year, but embraced upwards of 70 varieties of names; and that its correct corporate name was usually adopted by its correspondents and patrons.

It is not claimed that the officers or agents of the defendant were accustomed during any part of this period to use any other than its corporate name, or assumed the right to do so until after the complainant commenced business. To the contrary, they were solicitous and painstaking to correct the tendency of its customers to address it by any other than its corporate name; and it was their practice to send envelopes to customers with its correct name printed upon them, to prevent the occurrence of such mistakes. Concisely stated, the question would seem to be, whether the defendant can appropriate to itself the various misnomers applied to it by the carelessness or inaccuracy of a comparatively small number of its customers during a period of 10 or 11 years, notwithstanding the zealous and active measures of its managers to repress the practice, and their success in preventing it from ripening into a general usage.

It would hardly be contended that an individual could found a claim of possessory right to any species of property upon the unauthorized conduct of other persons, or maintain that he had adopted a name symbolizing his products, or identifying his personalty with

his business, by protesting against its use; and of course a corporation does not occupy a different position. The proofs show that there was no general recognition of the defendant among its customers by any other than its corporate name, and no adoption by the defendant of a different name, and it must be held that the occasional or persistent use of the misnomer by a few of the defendant's customers gave no privilege to the defendant to a monopoly in the use of the name.

If the proofs warranted the inference that the complainant assumed a name by which the defendant was known for the fraudulent purpose of deceiving the public, and of supplanting the defendant in the good-will of its business, the court would not only refuse to assist the complainant, but would intervene to protect the defendant. A careful reading of the proofs fails to disclose the existence of any such design, or of any intention to adopt a name with which the defendant had already become appreciably identified. The case is destitute of evidence to indicate that the complainant's corporators were aware or had reason to suppose that the defendant had become known to any extent by any other name than its corporate name. So far as appears, they had no knowledge that defendant's customers ever addressed it by other names. Nor is there anything in the proofs to justify the insinuation that the complainant was organized for the purpose of annoying the defendant by illegitimate competition. It does appear that the persons who organized the complainant had been the managers and agents of another corporation, the Rubber Clothing Company, which for many years had been a competitor of the defendant at the city of New York; that propositions for a consolidation of this company with the defendant had been somewhat discussed between their respective managers without result; and that shortly afterwards the complainant was organized. For a time its affairs were transacted at the office of the Rubber Clothing Company, and the two concerns maintained very intimate relations, as might be expected from the circumstance that the managers were the same persons in both. But the salient facts that the new corporation started with a cash capital of $500,000 and engaged in new branches of trade while the old company continued in business, sufficiently refute any theory that complainant was not a *bona fide* concern. If it should be conceded that the two concerns were practically one, and that the main object of the complainant's organization was to enable the Rubber Clothing Company to assume a new name,—one which would represent a corporation dealing in rubber articles generally, instead of in clothing only,—there would be no occasion for censure because the new name was better adapted to describe the business of the corporation. The Rubber Clothing Company had long ceased to manufacture and sell clothing only, and had become engaged in selling rubber goods generally. It was undoubtedly intended by those who organized the new concern to engage in the general rubber trade

upon a more extensive scale than that of the old company. The name selected was an appropriate one, and those who adopted it had a perfect right to do so, provided they did not know or have reason to believe that by doing so they would interfere with the business of the defendant. The fact seems to be that both the Rubber Clothing Company and the defendant were doing business under names that were somewhat misleading to such persons as had not learned, by business intercourse with them, that they were manufacturers and dealers in rubber goods generally. It would have been entirely proper for either of them to adopt a new name. The complainant adopted a new name first, and if it was only the Rubber Clothing Company with a new name, the defendant had no right to complain so long as the name did not serve to engender unfair competition and deceive the trade. As has been said, however, it was a new concern with a large capital, and contemplating enlarged business operations, and the proofs do not show that its corporators were moved to select its name by any illicit motive towards the defendant. If the name selected was one calculated, by its similarity to defendant's name, to lead to confusion of business, and to confounding the identity of the two corporations, it might well be urged that those who adopted it should abide by the consequences, although they were innocent in their intentions, and not ask a court of equity to protect them against the inconveniences which might follow. But the defendant, not content that the consequences shall rest where they fall, insists upon the exclusive right to use the name, and since the complainant assumed it has issued notices and circulars to the trade, and put up a sign calling itself by the complainant's name. Upon the same theory it can also claim the exclusive right to use the multitude of misnomers applied to it from time to time by its careless customers. It has a distinctive name of its own, which it formally adopted, and which has been carefully preserved by its agents until the complainant selected one. It ought not to complain now because the latter was the first to avail itself of the choice of selection out of all unappropriated names. Certainly, it cannot be permitted to appropriate the complainant's name, or one substantially identical, and, by asserting itself as the Goodyear Rubber Company, mislead the public to the detriment of the complainant.

A decree is ordered for complainant, and the cross-bill of the defendant is dismissed.