## YALE & TOWNE MFG. CO. v. FORD.

(Circuit Court of Appeals, Third Circuit. February 15, 1913.)

No. 1,668.

TRADE-MARKS AND TRADE-NAMES (§ 11*)—NAME OF PATENTED ARTICLE—EFFECT OF EXPIRATION OF PATENT.

Where the maker of a patented article marked it as patented, and also designated it by an arbitrary name by which it became known to the public, on the expiration of the patent other manufacturers, having the right to make the article, had also the right to use the name, provided they took proper care to prevent their product from being confused with that of the original maker.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. § 11.*]

Appeal from District Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

Suit in equity by the Yale & Towne Manufacturing Company against Frank J. Ford. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 196 Fed. 176.

Archibald Cox and Louis H. Porter, both of New York City, for appellant.

Augustus B. Stoughton, of Philadelphia, Pa., for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and RELLSTAB, District Judge.

BUFFINGTON, Circuit Judge. In the court below the Yale & Towne Manufacturing Company, a corporate citizen of Connecticut,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

filed a bill against Frank J. Ford and another, citizens of Pennsylvania, to restrain them from an alleged unlawful use of plaintiff's trade-name "Triplex," as applied to spur-geared hoisting blocks and from unfair competition. After final hearing the court filed an opinion as follows:

"I cannot distinguish this case from Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169 [16 Sup. Ct. 1002, 41 L. Ed. 118], and similar decisions. The 'Triplex' block was patented in 1889, but, as the patent has now expired, the defendant had a lawful right to make the article. Moreover, as the word 'Triplex' is not a descriptive but an arbitrary word, and is undoubtedly associated in the public mind with the patented article, the defendant had the right to use the word on the expiration of the patent, provided he took the proper care to prevent his own goods from being confused with the goods of the original manufacturer. This he has taken; he uses the word 'Tribloc' instead of 'Triplex,' and (what is probably more important) he adds his own name as the name of the maker, and also the place of manufacture. On the authority of the cases referred to, the bill must be dismissed with costs."

From a decree dismissing the bill the plaintiff took the present appeal. After argument and full consideration, we think this brief opinion accurately summarizes and correctly decides the case. The plaintiff a number of years ago began manufacturing a hoisting block in which the spur gears of the block wheel engaged the links of a pull chain. The testimony of the plaintiff's president was that plaintiff commenced the manufacture of chain blocks—

"by the obtaining of an exclusive license for the United States under the patents of Thomas A. Weston, covering the differential pulley block. A little later we took over the business of three or four other manufacturers who had been infringing the Weston patents, included among whose lines were a spur-geared type of differential pulley block. The business grew from year to year, and was combined later with the manufacture of cranes in which we did a large business for some time. We then discussed with Mr. Weston the desirability of a chain block having higher mechanical efficiency than the differential block, with the result that he took up the study of this question, developed successive ideas and designs, which we tested experimentally, this work covering upwards of three years. The final result was the development of the block which is in issue in this suit, which we put upon the market in 1890. * * * During the three years or more of experimentation preceding the placing of the block upon the market, we commonly referred to it as the 'spur-geared block,' to which we also frequently added the inventor's name, thus calling it, 'Weston's spur-geared pulley block.' * * * We have always used those names as descriptive of the block and its type of mechanical construction, but, when we were preparing to place it on the market, we thought it expedient to associate another name which would be indicative of the source of origin; that is, would indicate briefly by a handy word, when that word became familiar to the public, the fact that the block was made by the Yale & Towne Manufacturing Company. We considered a large number of arbitrary and fanciful words and finally selected the word 'Triplex' from among them."

The blocks were marked "patented June 5th, 1886, October 18th, 1889," which were the successive patents, granted to Weston, and which references, as testified by the same witness, "indicate or are intended to indicate that the block embodies the invention of those patents." On the expiration of these patents, the exclusive right of the plaintiff ended, and the complete right to the enjoyment of Weston's invention became vested in the public, and the enjoyment of that right by the public was its first benefit in return for the exclusive right given to Weston. But during the years of his enjoyment of that ex-

clusive right Weston and his grantees had seen fit, for their own trade purposes, to give to the patented article an arbitrary name which individualized and designated it in the public mind. "We considered a large number of arbitrary and fanciful words, and finally selected the word 'Triplex' from among them." In other words, they had by so marking Weston's block as patented and designating it as a Triplex block brought it about that at the expiration of the patent the block which the public acquired the right to make was the hitherto patent-restricted Triplex block. It is true that during that time, in addition to its association with the Weston patents and its significance as designating a patent connection, the Triplex block had also gained a further significance as indicating the work and product of the plaintiff company, who alone had the right to make the patented block. And it is over this fact, and at this point, where the public is entitled to the full and untrammeled enjoyment of the invention, that the due adjustment of the trade rights of the former exclusive user becomes a troublesome question. To us it is clear the commercial value of a patent is the creation of a public desire for its product. And if the invention is such that its product has acquired a distinctive name, then the public, when its time of enjoyment comes, cannot enjoy to the full the freed invention, unless coupled thereto is the right to use the name by which alone the invented article is known. Nor is there injustice in this, for, when the real situation is analyzed, it will be seen that by enjoying the monopoly of his patent for a series of years the patentee impliedly agrees, as maker and seller of the invented article, that, when his patent expires, he will not only surrender to the public the mechanical right to duplicate the article, but also the distinctive name the public has appropriated to the patented article; for it is apparent that the public cannot use the invention to the full without having the incidental right to vend its product by the distinctive name which the public has given it. In other words, taking this case, the public cannot now enjoy an untrammeled right to make the Triplex block of the seventeen-year monopoly, unless it has the incidental right of saying we now make and sell a Triplex block. Any other construction would make the patent a mere incident to trade-names, and would nullify the basis which alone justifies the grant of patented rights, namely, the right, on the expiration of the patent, to the full commercial use of the freed invention. For illustration, suppose that Benjamin Franklin had for seventeen years made his stoves under a patent, and that during that time these stoves had come to be known as Franklin stoves. Can there be any doubt that when a foundryman, at the expiration of the patent, wanted to manufacture and sell such stoves, that he could not call them Franklin stoves, and mark them and sell them as Franklin stoves? If he could not, the invention would be of diminished practical use, and the monopoly of the patent measurably retained by the patentee. The consideration which the public enjoys in return for the patent only begins when the patent expires, but, when it does expire, the invention and the designation by which, as a patented article, it has become known, passes into the general public right, subject, of course, to the 'imitation that the person who uses it shall so act as not to lead the public to believe that when buying such article they are buying one

made by some other person, including, of course, the patentee. To that end, the law has required the article to be so marked with the maker's name or otherwise as shall prevent confusion and deception in this respect. How that marking shall be done is a matter for decision in each case. But, subject to such condition, which courts should in the interest of commercial morality efficiently enforce, the right of the public at the expiration of the monopoly to make and market the released article by the name it had acquired during the restricted period is unquestioned. Tested by these considerations, it is clear to us that the Triplex block embodied patented features and was marked, when sold as patented; that the name Triplex was not descriptive but was an arbitrary name designedly given by the maker to the patented article; and that such name was accepted by the public and became associated in the public mind with the patented article. It follows, therefore, that under Singer v. June, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, and kindred cases, on the expiration of the patent, the defendant had a right to use that name as a designation of the patented device, provided he used proper care to prevent it from being confused with the goods of the original manufacturer. "This," as said by the court below, "he has taken," and as proof thereof instead of using, as he contends he had a right to do, the word "Triplex," he further evidences his good faith by putting on his block both the name and place of his company as makers, and giving it the name "Tribloc." In selecting the place for the maker's name the defendant has put his name on the same side the plaintiff did. This location would seem to evidence good faith as it is calculated to at once attract the notice of one familiar with plaintiff's block and its marks. However, as objection was made thereto at bar and as defendant has signified its willingness to adopt any style of differential marking suggested, we will, in pursuance of such consent, direct that as soon as practical the name and place of the defendant company be cast on the same side of the block with the name "Tribloc," and that all lettering be in such contrasted color to the color of the block as will challenge attention.

In accordance with these views, the decree below will be affirmed.