AMIESITE ASPHALT CO. OF AMERICA v.
INTERSTATE AMIESITE CO.
(two cases).
Nos. 4937, 4938, 5415.

Circuit Court of Appeals, Third Circuit.
Sept. 19, 1934.

Charles J. Hepburn, of Philadelphia, Pa., and Caleb S. Layton and Hugh M. Morris, both of Wilmington, Del., for appellant.

Ayres J. Stockly, of Wilmington, Del. (Henry N. Paul, Frank B. Fox, and John H. Austin, all of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the incorporated Amiesite Asphalt Company of America, hereafter called plaintiff, brought suit against the incorporated Interstate Amiesite Company, hereafter called defendant, charging the latter with wrongfully using the trade-name or trade-mark "Amiesite," and prayed injunctive relief. Subsequently defendant made a counterclaim, charging plaintiff with oppressive and wrongful conduct in alleged intimidation of its customers, and also sought injunctive relief. During the pendency of the case, the court granted the order prayed for by defendant and enjoined plaintiff, during the continuance of the case, from so acting. Thereupon plaintiff took an appeal to this court. After hearing such appeal, this court, on being advised the main case had been heard on final opinion, and that the trial judge would shortly file his opinion, held the appeal in abeyance to await the judge's decision. Thereafter such opinion was filed, and in pursuance thereof a final decree was entered dismissing the plaintiff's bill. Thereupon an appeal was taken by plaintiff. It will thus appear that, if the final decree of the court be affirmed, the appeal of plaintiff from the grant of the preliminary injunction becomes moot. Accordingly, we address ourselves to the plaintiff's controlling appeal from the decree dismissing its bill.

From the proofs it appears that Dr. Joseph Hay Amies had for some years prior to 1908 and 1909 carried on experiments in material for road building. His experiments finally resulted in a composition of ingredients which, after being subjected to certain treatment, could be transported to a roadbed and "laid cold." Under pressure, the mixture hardened and made a firm and durable

road. To protect his invention, Dr. Amies, on February 20, 1909, applied for, and on September 21, 1909, was granted, patent No. 931,494 for "composition for paving purposes." Shortly thereafter he applied for some six other patents which concerned minor improvements of his above-patented composition for paving purposes. These patents were acquired by the predecessor of plaintiff and subsequently by plaintiff. Both such companies were holding companies which did no manufacturing and built up no manufacturing or selling business of their own; their business being confined to licensing, manufacturing, and selling companies under the cited patents. In addition to the patents, and to further protect Dr. Amies' invention, an application was on January 23, 1909, made by the Amies Asphalt Company, the assignee of the patent, for trade-mark of the word "Amiesite," which was registered on November 2, 1909, to the Amies Asphalt Company under the number 75658. Such application was under oath and in compliance with the statutory requirement that "the length of time during which the trade-mark has been used," shall be included in the application. It was therein stated that "the trade-mark has been continuously used since December 16th, 1908." The application contained the word "Amiesite" in script with a dash thereunder. Subsequently thereto, defendant, using as part of its corporate name the word "Amiesite," namely, the Interstate Amiesite Company, was duly licensed by the then owner of the Amies patents to make and sell the invention thereof in certain states, and recited in said license was the statement that the licensee has the right to use certain patents in the manufacture of Amiesite in the territory thereinafter described. In pursuance thereof, defendant built up a large business in making and selling the patented article which the trade, the plaintiff, and defendant called Amiesite. Pursuant to such license, defendant paid the patent owners over $400,000 in royalties therefor. In point of fact, the Amies patent expired in 1926, but neither the public nor defendant seem to have realized that fact, and defendant continued to pay royalties thereon to and including 1930. Thereafter defendant allowed its license to expire and continued to make and sell Amiesite. For so doing, and to stop further sale by defendant, plaintiff brought this bill.

At this point we note that all of the matters above stated are facts, and while, as we hereafter state, there are other matters which it is contended modify such facts or warrant certain modifying inferences to be drawn therefrom, yet, after all, the facts above stated still remain proven, namely, the date of the patenting of Dr. Amies' invention; the fact of its being patented; the date and statement of the use of the word "Amiesite"; the fact that such patented invention and trade-name were licensed to defendant under its name of an Amiesite Company, to wit, the Interstate Amiesite Company, and large royalties paid based on the tonnage of Amiesite produced; and that, in building up such business, plaintiff continuously asserted Amiesite was made in pursuance of the patent granted therefor. Such being the case, the court held the principle stated by this court in Yale & Towne Mfg. Co. v. Ford, 203 F. 707, 709, and by the Supreme Court in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118, applied, and consequently held that, at the expiration of the patent for Amiesite, the monopoly ended, and, with the vesting in the public of the right to use the invention, there also passed a right to use the word "Amiesite" to designate and describe the product of such expired invention. Indeed, the case in hand is even stronger than the Singer Case. In that case June had no connection with the Singer Company during the life of the patent; Singer was the sole maker and seller, and alone made the name "Singer" valuable. In the present case the defendant was the sole maker and seller, and its acts built up and gave value to the patented product and the name "Amiesite." Moreover, not only did it so make, sell, and popularize the product and name "Amiesite," but both in its incorporation and its operations, by its own name, "the Interstate Amiesite Company," it had the consent and approval of plaintiff as being an Amiesite Company. It will thus be seen that, over and above the right of the public to use both invention and name of the patented product when the patent monopoly ceased, which any one would have under the Singer Case, the defendant, as plaintiff's licensee and its representative in building up the business, had special equities as against plaintiff which June, an entire stranger to Singer, did not have. So also the present case presents stronger facts than that of Yale v. Ford, supra, decided in this circuit. At risk of repetition, we repeat the reasoning there set forth:

"To us it is clear the commercial value of a patent is the creation of a public desire for its product. And if the invention is such that its product has acquired a distinctive name, then the public, when its time of enjoyment

comes, cannot enjoy to the full the freed invention, unless coupled thereto is the right to use the name by which alone the invented article is known. Nor is there injustice in this, for, when the real situation is analyzed, it will be seen that by enjoying the monopoly of his patent for a series of years the patentee impliedly agrees, as maker and seller of the invented article, that, when his patent expires, he will not only surrender to the public the mechanical right to duplicate the article, but also the distinctive name the public has appropriated to the patented article; for it is apparent that the public cannot use the invention to the full without having the incidental right to vend its product by the distinctive name which the public has given it. In other words, taking this case, the public cannot now enjoy an untrammeled right to make the Triplex block of the seventeen-year monopoly, unless it has the incidental right of saying we now make and sell a Triplex block. Any other construction would make the patent a mere incident to trade-names, and would nullify the basis which alone justifies the grant of patented rights, namely, the right, on the expiration of the patent, to the full commercial use of the freed invention. For illustration, suppose that Benjamin Franklin had for seventeen years made his stoves under a patent, and that during that time these stoves had come to be known as Franklin stoves. Can there be any doubt that when a foundryman, at the expiration of the patent, wanted to manufacture and sell such stoves, that he could not call them Franklin stoves, and mark them and sell them as Franklin stoves? If he could not, the invention would be of diminished practical use, and the monopoly of the patent measurably retained by the patentee. The consideration which the public enjoys in return for the patent only begins when the patent expires, but, when it does expire, the invention and the designation by which, as a patented article, it has become known, passes into the general public right, subject, of course, to the limitation that the person who uses it shall so act as not to lead the public to believe that when buying such article they are buying one made by some other person, including, of course, the patentee."

Moreover, the present case involves no confusion of goods or unethical conduct. The case is devoid of any proof either that defendant represented its product as that of plaintiff or that the public has been in any way misled. At the termination of its license, defendant simply went on to make and sell Amiesite as it had always done, save in one safe-guarding precaution, namely, it ceased using the word "Amiesite" in script form with an underlying dash, and began using block letters on its signs, contracts, bids, and literature. Such being the law on the facts stated, it follows the court below rightly decided the case, unless there were facts to take the case out of the general principle above stated. This plaintiff sought to do on two grounds, one that the expiration of the patents had no effect on the use of the registered trade-mark "Amiesite"; the other that, before the patents were granted or the name registered, plaintiff had used the name "Amiesite" as a trade-name. The first contention, namely, that the expiration of the patents had no effect on the use of the registered trade-mark, has been negatived in what we have set forth above. As to the second contention, namely, the use of the word "Amiesite" prior to the patents, the court below, after hearing the vast mass of testimony taken and after analyzing the same, held: "The proof overwhelmingly establishes that the exclusive use of the trade-name and the monopoly under the Amies patent were substantially contemporaneous. Patent monopoly and trade-name monopoly started and ended together." 4 F. Supp. 504, 513. If this terse but all-embracing finding is right, it puts an end to plaintiff's contention. After full consideration had, we find ourselves in accord with the trial court. We will not attempt to comprehensively discuss the mass of testimony the judge heard or to set forth all the reasons leading us to our conclusion, but will refer only to some of the things which strengthen our conclusion that the judge was right in so holding.

Dr. Joseph Hay Amies, in whose name the word "Amiesite" had its origin, experimented in material for road building. His work, and its nation-wide approval, culminated in his patent No. 934,494, noted above. His work theretofore, while extensive and educational, found vent in no invention that left any impress on road building, but the invention disclosed in the above patent gave to the art the great contribution of a "cold mix" and indelibly linked his name, "Amies," with his patented product, "Amiesite." The "cold mix" invention he made was tersely but comprehensively set forth in his specification: "I place a batch quantity of broken stone, gravel, or like materials upon a mixing board or in a mixing machine and mix them with any desirable light oil. I then pour thereon and thereover and mix well therewith a due quan-

tity of boiling asphalt or other like elements suitable for paving compositions. I then throw thereon and mix therewith a due amount of air slaked lime or crushed carbonate of lime or a mixture of these to cover the individual particles of the said composition, and thus form a granular and friable mass that will adhere together and form a solid mass under pressure."

Upon this disclosure, he made and was granted a single, simple, but inclusive claim, as follows: "The herein described method of making a composition for paving purposes which consists in taking mineral materials and the like, coating them with a light oil, then mixing them with a binder as hot asphalt, and then coating the particles of the said composition with air slaked lime, crushed carbonate of lime, or lime powder, as fully set forth."

Contemporaneously with the application for the patent, the application for the word "Amiesite" was made. When we consider that it is of advantage to the applicant for trade registration to carry back such use as far as he can, we are impressed that Dr. Amies, who is now dead, when his company thus made use of his name to designate his invention which he was then seeking to patent, would not have limited such use to 1908 unless such was the fact. Moreover, it will be apparent that, if the name "Amiesite" had been given and had been acquired in public trade so far back as 1905, to which plaintiff now seeks to carry it, Dr. Amies would have endangered the grant of his patent because of his invention having been in such public use and trade as to have acquired from this public use and dealing a distinctive tradename so far back as 1905. In view of the statement in the application for registration that the use of the name dated to 1908; in view of the fact that Dr. Amies, who would naturally know the date, allowed his company to so state it; and in further view of the fact that the plaintiff and its licensee, the defendant, through a long course of business development and growth, in their literature, contracts, and addresses, coupled the patent of Amiesite and the trade-name "Amiesite" as the basis of such business, in view of the fact that the name "Amiesite" nowhere occurs in print to such time, and in view of the fact that the Amies Asphalt Company, which exploited Dr. Amies' earlier paving, in its offer to lay a sample pavement in Wilmington, Del., referred to its product as a pavement, stated its pavement is "known as Amies Asphalt Macadam," we are of opinion that a

heavy burden rests on those who assert an earlier date to establish that contention by certain and strong proof that such was the case. That burden has not been met. The adult witness who testified that in 1905 he had heard the name used in connection with a pavement laid by Dr. Amies was held by the court to be untrustworthy; and, in view of the fact that the other witness who testified to hearing the name used in 1905 was a mere boy at the time and the unlikeliness of his having the name impressed on his boyish mind, the trial court placed no dependence on plaintiff's proofs. Without referring to all the proofs bearing on the conduct of the plaintiff and its licensee, the defendant, in coupling the patent of Amiesite and the trade-name "Amiesite" together as a unitary fact, we refer to such expressions of the holding and the licensed plaintiff company running through a number of years. Before the Amies Amiesite patent, Dr. Amies' company, in its bids, not only did not use the word "Amiesite," but, on the contrary, called its product by another name, viz., "Known as Amies Asphalt Macadam." After the Amiesite patent, the language used by plaintiff in trade is set forth at length in the court's opinion, and is not here repeated. It suffices to say that these statements show that Amiesite was a patented product, that the first use of Amiesite was in 1909, and that the patent and the trade-name were linked together in date, subject-matter, and roadwork, for the twenty years following the grant of the Amies patent. Thus in 1930 plaintiff asserted: "The proven merits of this material have made it a leader in the field for the last twenty years and assure its continued use in ever increasing quantities." The previous year the plaintiff, describing Amiesite as set forth in the Amies patent and the time of its first use as 1908 or 1909, said: "By this process a thick coating of asphaltic cement is congealed immediately around each stone particle. * * * Nearly twenty years have elapsed since laying the first Amiesite pavement in Media, Pa." Two years before, plaintiff, after describing Amiesite, stated: "These considerations are protected in the Amies process." Two years previously plaintiff had stated: "Dr. Joseph Hay Amies of Pennsylvania developed a process of laying asphalt pavement cold. The mixture made in accordance with this process and the pavement resulting therefrom are known as Amiesite. The first public use of Amiesite was in 1909, when a pavement was constructed by this method at Media, Pennsylvania, a town not far from Philadelphia." Indeed,

the position of the plaintiff during the life of Dr. Amies' patent is summed up in a publicly circulated address of plaintiff's leading officer: "However, Dr. Joseph Hay Amies did solve this problem of producing a mixture that could be shipped and laid cold, which solution he accomplished when he invented the paving mixture that, with later improvements, is now known as 'Amiesite.'" In 1929 it was stated: "When this company was formed in 1923, we were working exclusively under the one Amies patent on Amiesite."

In view of these proofs and of others that might be cited, we are of opinion that the trade-name "Amiesite" was not used before Dr. Amies' invention, that it came into use and has been for years used as the designation of the Amies invention, and that, on the expiration of such patent, the monopoly of product and name, under the Supreme Court's ruling in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 S. Ct. 1002, 41 L. Ed. 118, and this court's in Yale & Towne Mfg. Co. v. Ford, 203 F. 707, ended, and the court below rightly dismissed plaintiff's bill. With such dismissal. the appeal from the preliminary injunction becomes moot. Accordingly, the plaintiff's appeals are dismissed.