**TELECHRON, Inc., v. TELICON CORPORATION.**

Civ. A. No. 934.

District Court, D. Delaware.

March 4, 1947.

Hector M. Holmes and Fish, Richardson & Neave, of Boston, Mass., James F. Hoge, Lenore B. Stoughton and George M. Chapman, all of New York City, Hugh· M. Morris (of Morris, Steel, Nichols & Arsht), of Wilmington, Del., for plaintiff.

Philip Handelman (of Handelman & Ives), of New York City, and Richard F. Carroon (of Southerland, Berl & Potter), of Wilmington, Del., for defendant.

LEAHY, District Judge.

Both to sight and sound Telechron and Telicon are similar. The mere utterance of the two words approaches an absolute identity in sound. Beside the point, says defendant, because the plaintiff's first field of endeavor was clocks and motors, not radio or television and I was first in the field. Defendant alleges it made up its name from two Greek words "Tele", meaning distant and "ikon", meaning image, because these two words in combination are suggestive of defendant's proposed field—television—and, in adopting the name it had no intent to ride on the coattails of a clock manufacturer. At this point, I shall not pause to re-examine or discuss the question whether the parties operate in wholly different fields, in allied fields, or deal in closely related or the same products. The facts, as found, supra, afford definite answers to each of these questions. My memorandum of decision will be devoted, in the main, to certain conclusions of law based upon certain other facts which are just as pivotal as the master facts already found.

1. The question is, Do the goods of plaintiff and defendant have the same descriptive properties? Infringement or unfair competition do not call for identity of goods. This Circuit has said unfair competition may be found when goods, though different, are so related as to fall within the mischief which equity should prevent.[1] Again this court has said: "The goods capable of being so passed off are not limited to those that are identical or even to those that have the same descriptive properties."[2]

2. Here, we have not only prospective potential confusion but also present confusion. A study of the sound and appearance of the warring words is sufficient. But, there is, also, evidence of actual confusion. Letters and telegrams intended for plaintiff went to defendant and letters for defendant went to plaintiff.[3] While I do not think the evidence was sufficient to establish a palming off, yet it was sufficient to establish confusion where on three instances orders were received for plaintiff's radios (Telechron) and defendant filled those orders and sold its own radios (Telicon). A clerk in Macy's radio department when asked to point out plaintiff's product was concerned with demonstrating defendant's product. There were other instances of confusion on the part of many other store employees of different concerns. There is also certain "expert opinion" evidence. Executives of such companies as Consolidated Edison Co. of N. Y., Inc., RCA, and Graybar Electric Company, Inc.—persons of experience and knowledge in the radio and electrical industry—were of the view that the continued use of the names of both plaintiff and defendant as trade-marks for radios and radio equipment will cause con-

---

[1] Kotabs, Inc. v. Kotex, 3 Cir., 50 F. 2d 810.

[2] Wm. A. Rogers, Limited v. Majestic Products Corp., D.C.Del., 23 F.2d 219, 220.

[3] One letter intended for defendant was received by plaintiff. The writer was an indignant purchaser of one of defendant's (Telicon) radios. He stated: "I had a lot of radios in my time but never a lemon like this one". This letter obviously shows that where confusion exists the writer of the "lemon" letter, for example, will think less kindly of plaintiff's products in future. This is threatened potential damage.

fusion among wholesalers, retailers and consumers.

 3. The corporate names are likewise strikingly similar. True, at the time defendant began to use Telicon, plaintiff's Telechron was not the sole element of its corporate name. But, Telechron was its mark and the predominant word in its corporate name; and both its products and its business had been generally known by the use of the word Telechron. Under such circumstances it is entitled to protection from the junior party who attempts to enter an allied field. House of Westmore, Inc. v. Denney, 3 Cir., 151 F.2d 261; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; Goodyear Rubber Co. v. Goodyear's Rubber Mfg. Co., C.C., 21 F. 276. Moreover, where confusion is present, it must, of necessity, be caused, in part at least, by the resemblance of the names in conflict. American Radio Stores v. American Radio & Television Stores Corp., 17 Del.Ch. 127, 150 A. 180. It matters not, even, that the business of the parties is different. This Circuit so held where one of the parties sold tires, the other automobiles. See Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674, affirming this court, D.C.Del., 268 F. 151.

 4. Apprised of invasion plaintiff acted promptly to protect its right. Plaintiff first learned of defendant's Telicon in January 1946. One of GE's patent attorneys had for over twenty years presided as guardian angel in protecting plaintiff's mark Telechron. In January 1946 he saw in the Patent Office Gazette publication of the mark Telicon for piezo electric crystals. GE then recommended that plaintiff should institute proceedings in opposition. At once, such action was instituted (January 1946). Those proceedings are now pending. It was not until May 1946 that plaintiff learned of defendant's use of Telicon with radios. After this, plaintiff investigated defendant's activities; there followed the formal infringement notice and the institution of the case at bar. Although proceedings in opposition made known to defendant that plaintiff challenged the use of Telicon, defendant thereafter commenced advertising its product and in the spring of that year (1946) offered its radio product for sale. Aware of plaintiff's challenge of the use of Telicon, which might result in vindication of plaintiff's claim for injunctive relief, defendant's repetitive utterances throughout this case that if an injunction issues—presently defendant plans a public issue of its shares to attract risk capital—it will spell financial ruin for defendant and its enterprise, must fall on deaf ears. Absent pressure from monopolistic groups, there must remain in our enterprise system a form of corporate free will. Our courts do not function to protect corporate litigants when they make a bad guess as to their legal immunity in determining a course of conduct vis-a-vis their competitors.[4]

 5. Upon this background of awareness since January 1946 that its conduct would inevitably be called to judicial scrutiny, defendant has nevertheless gone into the markets and stands today ready and anxious to catch the incoming tide of public demand for the competitive products. While this case has been tried by affidavits—in general, I am opposed to "trial by affidavits"—this is a case where I fail to see what new proof could be offered which would be of assistance in determining the bare legal questions involved. There is little dispute of fact; and a "full dress trial" would simply present the same issues. Yet, it is not my function to be categorical about such a matter; it may be a trial might bring forward new proofs, which would give a new vision of the controversy. At this phase of examination, however, I see potential damage to plaintiff which may only be safeguarded by a preliminary injunction. This is precisely the situation which has stimulated other courts to use that traditional process. Liberty Life Assurance Society v. Heralds of Liberty Delaware, 15 Del.Ch. 369, 138 A. 634; Coca-Cola Co. v. Los Angeles Brewing Co., D.C., 1 F.R.D. 67; G. G. White Co. v. Miller, C.C., 50 F. 277. Particularly appropriate is Judge Learned Hand's statement: "In

---

4 Cf. William Goldman Theatres. Inc. v. Loew's Inc., et al., 3 Cir., 150 F.2d 738.

choosing an arbitrary trade-name, there was no reason whatever why they should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor of the plaintiff. Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field." [5]

The preliminary injunction should issue.

---

[5] Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C., 219 F. 325. 326.