**TELECHRON, Inc. v. TELICON CORP.**

No. 10512.

United States Court of Appeals
Third Circuit.

Argued February 5, 1952.

Decided Sept. 9, 1952.

904

Philip Handelman, New York City (Handelman & Ives, New York City, Walter H. Schulman, New York City, on the brief), for appellant.

James F. Hoge, New York City (Hugh M. Morris, Alexander L. Nichols, Wilmington, Del. (Hector M. Holmes, Boston, Mass., Lenore B. Stoughton, George M. Chapman, New York City, on the brief), for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and MODARELLI, District Judge.

HASTIE, Circuit Judge.

This is an appeal from a decree for plaintiff, Telechron, Inc., against defendant, Telicon Corporation, pursuant to a complaint charging trade-mark infringement and unfair competition. The district court adjudged that plaintiff's "Telechron" is a valid registered trade-mark, that "Telicon" as used by defendant is a colorable and infringing imitation of "Telechron" and that defendant be permanently enjoined from the use of "Telicon" both as part of its name and in connection with the merchandising of radio and television sets and equipment.

A careful and elaborate district court opinion,[1] with nearly 100 supporting footnote references to particular items in the large record of two hearings, and the clear briefs and arguments of counsel have simplified our task of identifying, analyzing and disposing of the decisive issues. And since we agree with the ultimate conclusions and the judgment of the district court, this opinion will be restricted to particular points upon which additional discussion may be helpful.

1. D.C., 1951, 97 F.Supp. 131. See also D.C., 1947, 70 F.Supp. 439, opinion on granting preliminary injunction.

We begin with the status of "Telechron" as a registered trade-mark. In 1918 Henry Warren obtained letters patent for a timing device, the novel feature of which was a self starting synchronous electric motor successfully adapted to the operation of a clock. At the outset the device was manufactured and sold by Warren Clock Co. That company changed its name in 1926 to Warren Telechron Co., which in 1946 became Telechron, Inc. Ever since 1918 this corporation has been engaged in the manufacture and sale of synchronous electric motors and clocks and sundry related timing and switching devices. The enterprise has been highly successful.

In 1919 the inventor Warren coined the word "Telechron" which has been used ever since by the Warren Clock Co. and its successors in connection with their products and, since 1926, as part of the corporate name of the enterprise. In 1923 the corporation registered "Telechron" as a trade-mark for clocks, and in 1924 as a trade-mark for electric motors. There have been appropriate renewals of registration.

"Telechron" was formed by prefixing the Greek root "chron" with "tele", itself a combining form of Greek origin. "Kronos" was the mythological "God of Time". Adverbially, "tele" signified "from afar". Thus the etymology of the coined word yielded a connotation of "time from a distance".

The district court has protected "Telechron" as a statutory trade-mark lawfully registered under the Trade-Mark Act of 1905, 33 Stat. 724, 15 U.S.C. c. 3 (1946 ed), now 15 U.S.C.A. § 1051 et seq. However, defendant insists that the mark was not entitled to registration in first instance, reasoning that the word "Telechron" is "descriptive" within the prohibition of Section 5(b) of the Trade-Mark Act that "no mark which consists * * * merely in words * * * which are descriptive of the goods with which they are used, or of the character or quality of such goods * * * shall be registered under the terms of this subdivision of this chapter". 15 U.S.C. § 85 (1946 ed.), now 15 U.S.C.A. § 1052.

This statute, essentially no different from an equivalent doctrine of equity jurisprudence,[2] unquestionably precludes the use as a technical trade-mark of a word which in primary meaning describes generally or in particular attribute some article or articles of commerce.[3] At the other extreme it is equally clear that this limitation does not preclude the registration of a word which is a combination of nonsense syllables and thus yields no meaning on its face.[4] Here we have neither of those extremes. We are dealing with a coined word, not found even in approximation in the English or any other familiar language before Warren devised it for the use of plaintiff's predecessor.[5] But it is a "coined word with a penumbra of suggestion".[6] For the derivation of the new word, already alluded to, was such as to suggest to those informed in etymology or grounded in classical Greek the involvement of some conception of "time from a distance". But this idea was too imprecise for meaningful description of any article or object of commerce. We are unable to see how at the outset it could have conveyed even the vaguest mental image of any par-

2. In the field of equitable protection of trade-marks and names, judicial unwillingness to protect descriptive and generic words and phrases antedates the statute. See, for example, Canal Co. v. Clark, 1871, 13 Wall. 311, 323, 20 L.Ed. 581. Cf. Restatement of Torts (1938), § 721.

3. Beckwith's Estate, Inc. v. Commissioner, 1920, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705 ("Moistair"); Standard Paint Co. v. Trinidad Asphalt Co., 1911, 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536 ("Ruberoid").

4. See Kotabs, Inc. v. Kotex Co., 3 Cir., 1931, 50 F.2d 810, 811 ("Kotex");

Barnes v. Pierce, C.C.S.D.N.Y.1908, 164 F. 213 ("Argyrol").

5. We note but do not regard as significant that defendant has directed attention to a 1909 patent of a device for metering telephone service which the inventor called "telechronometer". There is no evidence of commercial history of the device or familiar use of the word.

6. See Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C., S.D.N.Y.1915, 219 F. 325, 327.

906

ticular thing or its attributes. Even later, when the synchronous electric clock had become well known we think the idea of "time from a distance" was not "descriptive". It was in the intermediate category of "suggestive" words which may become technical trade-marks.[7]

This distinction for purposes of trade-mark appropriation between descriptive and suggestive words is not arbitrary. The sense of it is made clear by just such a case as we have here. The basic reason for refusing to allow the exclusive appropriation of descriptive words in trade-marks is the danger of depleting the general vocabulary available to all for description and denomination of articles of commerce. It is unwise to risk the development of a situation in which those attempting to market their goods will find that they can not use apt normal words or phrases in depicting or characterizing articles because of language preemptions by others. So the legal protection of trade-marks is restricted in manner calculated to keep such descriptive words free for all.

The devising and registration of "Telechron" created no such danger of impoverishment of the language. "Telechron" had no existence as a word before Warren devised it. Though its elements were a familiar root and a familiar combining form it neither looked like nor sounded like any other word which someone else might want to use in merchandizing. Thus the only restrictive effect which could be anticipated from the exclusive appropriation of this coined word as a trade-mark would be to prevent subsequent innovators from devising and employing in confusing ways still other new words of similar sound or appearance. This is a small and

relatively unimportant restriction upon future business. It is neither harsh nor unfair. It is amply justified by the large interest in protecting the entrepreneur who already has developed a new trade symbol and utilized it to designate his own output. Thus analyzed any suggestiveness in "Telechron" does not amount to that descriptiveness which invalidates a trade-mark.

A second argument against plaintiff's claim of exclusive right to "Telechron" is predicated upon the holding and language of Singer Manufacturing Co. v. June Manufacturing Co., 1896, 163 U.S. 169, 199, 16 S.Ct. 1002, 1014, 41 L.Ed. 118, "That where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created." Even if "Telechron" was not originally descriptive defendant contends that it has become generic, a familiar name given to timing and switching devices of whatever origin employing the principle discovered by Warren and for a time exploited and marketed exclusively by plaintiff under protection of patents.

It is not denied that at all times there have been other familiar words apt to designate these devices. Indeed this record is full of such use of such words as "preselectors," "synchronous electric motors" and "electric clocks." But, argues defendant, "Telechron" has become a kind of compendious synonym embracing all these devices. This could have happened, although it seems a bit awkward and unlikely in view of the dissimilarities of the

. Cf. Pocono Rubber Cloth Co. v. Livingston, Inc., 3 Cir., 1935, 79 F.2d 446 ("Suavelle"); Fitch Co. v. Camille, Inc., 8 Cir., 1939, 106 F.2d 635 ("Run–R–Stop").

"Between these two extremes lies a middle ground wherein terms of mingled qualities are found. It cannot be said that they are primarily descriptive or that they are purely arbitrary or fanciful without any indication of the nature of the goods which they denominate. Such

terms, indeed, shed some light upon the characteristics of the goods, but so applied they involve an element of incongruity, and in order to be understood as descriptive, they must be taken in a suggestive or figurative sense through an effort of the imagination on the part of the observer. Many such suggestive terms have been approved as valid trade marks by the courts * * *." See General Shoe Corp. v. Rosen, 4 Cir., 1940, 111 F.2d 95, 98.

articles and the doubtful occasion for much use of a single word to designate them all, except by way of indicating a common source. But the important thing is that this question of how a particular word has been used and how it has been understood is a question of fact. In the district court it was necessary to discover as a fact whether the public or the trade ever came to use or understand Telechron in the fashion alleged by the defendant.

 We have found in the record, as did the district court, substantial and persuasive testimony relevant to this factual issue. It is unnecessary to repeat the district court's reference to and summarization of much of that testimony. The district court concluded that "Telechron" had not become the name of any article or category of articles. Rather the court found that "Telechron" continued to be understood by the public and the trade as a symbol of good will indicating merchandise from a single source, all in accord with the intention and representation of Warren and the plaintiff. On the evidence that finding was a reasonable and proper one. Therefore, we should and do sustain it.

With controversy as to this issue of fact thus resolved, there is no basis for the argument which the defendant predicates upon the holding and language of the Singer case. For while that case and other decisions which follow it[8] do point up the possibility and even the likelihood that, when the monopoly of a patent expires, a word formerly associated with the patented article as a trade-mark may pass with it into the public domain, it is clear that this consequence depends upon whether to the public or the trade the word has in fact become a name for the article itself. It is common knowledge that "Cellophane", "Singer", "Aspirin" and many other names have in fact had such a history,[9] with the

legal consequences elaborated in the Singer case itself. But, as already pointed out, it is established as fact in this record that "Telechron" has experienced no such history. To the contrary neither during the life of the basic Warren patents nor thereafter did "Telechron" become the name of any article of commerce. It has continued a valid registered trade-mark.

But even if "Telechron" is a valid registered trade-mark, defendant insists that the district court erred in concluding that there had been infringement, more particularly in finding that, within the meaning of the Trade-Mark Act, "Telicon" was a "colorable imitation" of "Telechron" used in connection with goods of "substantially the same descriptive properties" as those marketed under plaintiff's mark.[10] This aspect of the controversy must be reviewed in the light of what the record shows about the commercial history and activities of both parties.

Mention has already been made of the long continued use of "Telechron" by plaintiff as a mark for timing and switching devices. As early as 1931 and from time to time thereafter manufacturers and vendors of radio sets have incorporated in their sets electric clocks, visibly marked "Telechron", which had been manufactured and sold for such use by plaintiff. In most cases this mark appeared on the clock dial in such manner as to be noticeable to purchasers and other viewers of the radio. Beginning in 1935 and ever since, except for war time interruption, plaintiff has manufactured and sold for attachment to and use with radio sets its "preselectors", marketed under the "Telechron" trademark. This device achieves the automatic turning on and off of a radio receiver at times predetermined by the setting of the preselector. It has enjoyed a substantial national market.

8. Appellant relies upon Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, and, in this circuit, Amiesite Co. v. Interstate Amiesite Co., 1934, 3 Cir., 72 F.2d 946, and Yale & Towne Mfg. Co. v. Ford, 3 Cir., 1913, 203 F. 707.

9. See Dupont Cellephane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F.2d 75; Bayer Co. v. United Drug Co., D.C., S.D.N.Y.1921, 272 F. 505.

10. The quoted phrases define infringement under the statute. See 33 Stat. 728, 15 U.S.C. § 96 (1946 ed.), now 15 U.S.C.A. §§ 1057(b), 1114, 1115, 1117.

In 1940 plaintiff began plans for marketing under its own name a clock radio incorporating the preselector feature. The project matured after the war and retail distribution of this clock radio under the name "Telechron Musalarm" began in 1946 and has continued. Throughout the country some 700 wholesalers and more than a hundred times that many retailers distribute plaintiff's products.

Defendant corporation's beginnings go back only to 1942. Until 1946 its principal business was the manufacture of piezoelectric crystals, devices for stabilizing or accurately controlling the frequency of electronic oscillators, which are used widely in various types of radio transmitters and less frequently in radio receivers and other manufactures in the field of electronics.

In 1946 for the first time "Telicon" radio and television sets appeared on the retail market. This prospect had been advertised to the trade as early as 1944. Indeed, defendant shows that in adopting the name "Telicon" in 1942 it had the prospective field of television in mind. For "Telicon" was coined from "eikon", Greek noun for image, and the familiar "tele" to connote "image from afar".

In these circumstances defendant urges that its mark is an original conception, not intended as an imitation of "Telechron", quite distinguishable from plaintiff's mark and not likely to cause confusion. On the confusion issue it is also pointed out that defendant has manufactured only large and expensive radio and television sets while plaintiff has marketed only small table radio sets and nothing in television. Confusion is unlikely, it says, where one concern is in the television and large radio field and the other is in the field of electric timers and small radios. We will consider the similarity of the marks and the similarity of the goods separately.

 ·We agree with the district court that "Telicon" is a colorable imitation of "Telechron", within the conception of

trade-mark infringement. It is not essential to infringement of a registered trademark that the junior in the field intended to appropriate his predecessor's mark or good will.[11] Moreover, in this case defendant was advised of plaintiff's claim of infringement in January, 1946. At that time defendant's radio and television sets had not been offered to the public. Yet defendant persisted in its plan to market such articles under the name "Telicon". It took the risk after being warned of too close resemblance between the two words. Thereafter it was not in position to urge its original blamelessness as a consideration which should be persuasive to a court of equity. Rather it had to stand or fall on the merits of the contested issue of confusing resemblance.

"What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled."[12] In this case the district court was impressed that in ordinary pronunciation "Telechron" and "Telicon" sound so much alike that one may easily be confused with the other. Moreover, this record contains substantial direct testimony of several instances of actual confusion in business dealings and particularly in the retail marketing of radio sets as a result of the phonetic similarity of these two words. Defendant seeks to minimize this evidence. We have examined it and regard it as adequate substantiation of tendency to confusion inherent in the obvious similarity of the words themselves.

 Moreover, we regard this as a type of case where a court properly requires the second comer to stay clearly away from the original mark. This is not like the case where the second comer is allowed to use a common word, "Muffler", despite a valid trade-mark, "Mufflet".[13] Defendant here

11. Thaddeus Davids Co. v. Davids Manufacturing Co., 1914, 233 U.S. 461, 34 S. Ct. 648, 58 L.Ed. 1046; Saxlehner v. Siegel-Cooper Co., 1900, 179 U.S. 42, 21 S.Ct. 16, 45 L.Ed. 77.

12. See McLean v. Fleming, 1877, 96 U.S. 245, 251, 24 L.Ed. 828.

13. Hygienic Fleeced Underwear Co. v. Way, 3 Cir., 1905, 137 F. 592.

cannot claim that he is exercising the normal privilege of using ordinary language in his business. This is a case of a first coined word and a second coined word resembling it. In such circumstances we think the sound approach is that indicated by Judge Learned Hand's reasoning that as between two arbitrary trade names "any possible doubt of the likelihood of damage should be resolved in favor of the [first user]. Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field. He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question." [14]

▮▮ The second point on the issue of infringement is whether "Telechron" and "Telicon" have been used for goods of "substantially the same descriptive properties". This court and courts generally have made practical rather than technical considerations the test here, construing the phrase in question comprehensively in the light of the mischief which equity seeks to avoid in trade-mark protection. Utilization of articles for related purposes, customary purchase of the articles in the same or similar retail outlets of specialized character, or any other reasonable and likely basis of association calculated to promote confusion between similar marks or designations may be evidence of likeness of descriptive properties.[15] One court has emphasized this practical approach by phrasing the test of similarity inversely—whether there is "enough disparity in character between the goods of the first and second users as to insure against confusion".[16]

So, in various circumstances enough similarity in descriptive properties to support an adjudication of trade-mark infringement has been found between automobiles and auto tires, radio sets and component parts thereof, men's suits and men's hats, sanitary napkins and pain killing medication, razor blades and writing instruments.[17] The case here is at least as clear as any of these cited. For both parties sold radio sets and components thereof. Moreover, radio sets, television sets and electric clocks and timers are all within a common merchandising field and likely to be found in the same store or in stores similarly specializing in electrical appliances. It is also a proper matter of judicial notice that many well known radio manufacturers have in recent years added television sets to their lines. A mark used in connection with radio is on that account more likely to be suggested by and confused with a similar designation applied to television sets.

▮ The injunction of the district court also extended to the use of "Telicon" in defendant's corporate name. Whether such use of a word resembling plaintiff's trade-mark is technically trade-mark infringement or more broadly unfair competition, it is an important part of the conduct of defendant which has tended to create the impression that his goods are derived from another actually unrelated source and may properly share such good will as plaintiff has earned for that source under its mark. The correction and prevention of that impression is the fundamental purpose of the injunction. Its achievement in part through prohibition of use of a confusing word in a corporate name is a familiar and proper expedient of equity in this type of case.[18]

14. See Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C., S.D.N.Y.1915, 219 F. 325, 326.

15. See cases cited in footnotes 16 and 17 infra.

16. See Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974.

17. See Akron-Overland Tire Co. v. Willys Overland Co., 3 Cir., 1921, 273 F.

674; Mohawk Electric Corp. v. Rollinson, 1928, 58 U.S.App.D.C. 127, 25 F.2d 551; Rosenberg Bros. v. Elliott, 3 Cir., 1925, 7 F.2d 962; Kotabs, Inc. v. Kotex Co., 3 Cir., 1931, 50 F.2d 810; L. E. Waterman Co. v. Gordon, 2 Cir., 1934, 72 F. 2d 272.

18. Cf. Rice & Hutchins, Inc. v. Vera Shoe Co., 2 Cir., 1923, 290 F. 124; American

Beyond this we deem it unnecessary to reanalyze any other aspects of the case as revealing unfair competition somewhat different from technical trade-mark infringement. The injunction was predicated on both grounds. We have stated in detail our analysis of the infringement aspect and regard unfair competition as an *a fortiori* conclusion in the circumstances.

The judgment will be affirmed.

Insulation Co. v. Eternit Roofing Corp., D.C., E.D.N.Y.1926, 14 F.2d 235; Rupert v. Knickerbocker Food Specialty Co., D.C., E.D.N.Y.1923, 295 F. 381.