LIBERTY LIFE ASSURANCE SOCIETY, a corporation of the State of Alabama,

*vs.*

THE HERALDS OF LIBERTY OF DELAWARE, INC., a corporation of the State of Delaware, and EMANUEL BARRICK, its Supreme Recorder.

*New Castle, July 20, 1927.*

*James I. Boyce*, and with him, *George J. Edwards, Jr.*, of the Philadelphia, Pa., Bar, for complainant.

*George W. Lilly*, for defendants.

THE CHANCELLOR. In passing upon the motion for a preliminary injunction, I shall dismiss from consideration all suggestions of a right on the part of the defendant corporation based on the alleged ownership by it of a copyright of the so-called plan under which the two corporations here involved operate. The complainant contends that the so-called plan is not lawfully the subject of copyright. The defendants insist that it is. Let the controversy upon the question of law involved upon that point be as it may, it yet does not appear clearly from the affidavits exactly what the nature and extent of the defendant corporation's copyright is. There is some sort of copyright which the defendants control, but the affidavits fail to disclose its character.

Nor need we concern ourselves with the law dealing with the rivalry of two corporations to use two corporate titles which are identical or so similar as not to be distinguishable, for the present corporate designation of the two corporations here involved are entirely dissimilar, the one being Liberty Life Assurance Society and the other The Heralds of Liberty of Delaware, Inc.

The real question which the motion presents is whether the defendant corporation is entitled to reap advantage from the name Heralds of Liberty at the expense of the complainant which first used that name as its corporate designation and which, it is claimed, by the expenditure of its effort and money gave to the name a

distinct value in the field of its circulation, a value which the complainant under its new name never intended to relinquish and which it still seeks to realize upon by continued use of the name.

*Paragraph* 1 *of section* 5 of the *General Corporation Law* of this State (*Revised Code* 1915, § 1919), under which the defendant corporation was created, provides that the name of the corporation proposed to be created "shall be such as to distinguish it from any other corporation engaged in the same business, or promoting or carrying on the same objects or purposes in this State."

The defendants contend that by virtue of this provision of the law, it is permissible for any proposed corporation to select any name it may choose not otherwise appropriated by a Delaware corporation and that no one may successfully challenge in the courts of this jurisdiction the choice thus made by the incorporators. While this is generally true, yet the general right thus conferred by the law to choose a corporate name *ad libitum* must be held to be subject to those considerations of justice and fair dealing which it is the special province of equity to promote and protect. If by the choice of a name for a corporation it is the manifest purpose of its incorporators to pirate the goodwill and trade-name of another, a court of equity ought, when appealed to, afford its protection to the aggrieved party.

The fact that the right to use the corporate name emanates from the State's sovereignty, cannot have the effect of legalizing a wrong. The defendant corporation was created under general law and in that respect is similar to the corporation which was involved in the case of *Peck Brother Co. v. Peck Bros. Co.*, 113 *F.* 291, 62 *L. R. A.* 81. In that case the Court of Appeals, in replying to the contention that it is not competent for a foreign corporation to attack the right of a domestic corporation to use a corporate name because of the sovereign nature of the source from which the right springs, used the following language:

"In a certain limited sense the sovereignty of the state had conferred the name. There is, however, in the term 'sovereignty,' no magic to conjure by. It can confer upon individuals no right to perpetrate wrong. Nor do we think that the sovereignty of the state of Illinois sought to do that. It has a general law of incorporation, by which any body of men combining for the purpose of business may incorporate under any name they may select. The name is not

imposed by the law, but is chosen by the incorporators. With that selection the sovereignty of the state has nothing to do. The act of sovereignty allowing incorporation is permissive, not mandatory. It sanctions the act of incorporation under the name and for the business proposed, if that name and that business be otherwise lawful. The sovereign by the act of incorporation adjudges neither the legality of the business proposed, nor of the name assumed. That is matter for judicial determination by a court having jurisdiction of the subject when the legality of the business or of the name is called in question. If one may not use the name imposed upon him *in invitum* so that it shall work wrong to another, by what token may he become incorporated under a name selected by himself to effect like wrong? And how is the sovereignty of a great state impunged by the denial to incorporators of a right to perpetrate such a wrong? Is it possible that a sovereignty of a state can be thus invoked to perpetrate a fraud? If it may be, then indeed will that sovereignty stand for oppression, and not for justice."

These views so cogently expressed I accept for my guidance here. See also the language of Judge Bradford of the United States District Court, for the District of Delaware, in *Philadelphia Trust, etc., Co. v. Philadelphia Trust Co.*, (C. C.) 123 F. 534, 540.

The question therefore is whether the use of the name Heralds of Liberty by one of the defendants constitutes an unfair encroachment upon the complainant's business. That a fraternal society is as much entitled to be protected in its "trade-name" as is an ordinary trading, mercantile or manufacturing concern cannot be questioned. Courts have afforded relief to the one as readily though naturally not so frequently as to the other. *Modern Woodmen of America v. Hatfield, et al.*, (D. C.) 199 F. 270; *Knights of Maccabees of the World v. Searle, et al.*, 75 Neb. 285, 106 N. W. 448; *Internat'l. Com. of Y. W. C. A. v. Y. W. C. A. of Chicago*, 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888; *Daughters of Isabella No. 1 v. National Order of D. A.*, 83 Conn. 679, 78 A. 333, Ann. Cas. 1912A, 822.

In *Phila. Trust, etc., Co. v. Phila. Trust Co.*, *supra*, Judge Bradford had before him a case which, though the business of the complainant was different in character from that of the complainant here, called for expressions of opinion which are equally applicable here. In that case the complainant, a Pennsylvania corporation, was originally incorporated under the name of "The Philadelphia Trust, Safe Deposit and Insurance Company of the City of Philadelphia." Its name was later changed to "the Phil-

adelphia Trust, Safe Deposit and Insurance Company." The complainant was generally known and commonly called, however, "The Philadelphia Trust Company" or "Philadelphia Trust Company." It received mail in that name and checks were drawn to it in that name. The defendant in the case became incorporated in Delaware under the name "Philadelphia Trust Company." Its articles of incorporation were similar as to objects and powers to those of the complainant. Inasmuch as the use by the defendant of the name selected by it, the name by which the complainant was known, would be calculated to produce confusion in the business of the two corporations, mislead the public as to the identity of the corporation intended to be dealt with and also produce unfair competition in business, a preliminary injunction was issued against the use of its corporate name by the defendant. Among other things of applicable relevancy here, Judge Bradford used this language·

"While a corporation generally, if not invariably, is confined to the use of its corporate name in judicial proceedings and its transactions of business, it may by usage be generally and commonly called to the public by a different name."

Turning to the facts of the instant case, it appears clear beyond doubt that the complainant has for a long time been known as "The Heralds of Liberty." For twenty-four years that was its exact corporate name. Since 1925, when its old name was changed to the present one, it has nevertheless been generally known as the Heralds of Liberty, has many certificates outstanding in that name, still issues certificates in that name, houses its Philadelphia executive offices in a building bearing that name, lists itself in the telephone and city directories in that name, receives checks to its order in that name and much correspondence is addressed to it in that name.

The defendant company was organized to engage in the same business as the complainant is engaged in. It has imitated the name by which the complainant is familiarly known. It has gone further. It has copied for its charter the charter of the complainant almost in *haec litera* and faithfully borrowed from the complainant its scheme of organization and its classes of officers and

the exact nomenclature descriptive of each. It has furthermore entered the city of Philadelphia and organized a grand lodge to which it has given the same identical name as is possessed by the complainant's McKinley Grand Lodge located in that city. While generally speaking the circulation of the list of paid claims referred to in the statement of facts for the purpose of illustrating how the plan works out under which death and joint claims are matured, cannot be objectionable if done in such way as not to mislead the public into thinking that such claims were paid under the defendant corporation's management rather than by the complainant (*Hazelton Boiler Co. v. Tripod Boiler Co.*, 142 *Ill.* 494, 30 *N. E.* 339), yet if such list contains names and addresses of the complainant's members who received payment of the claims, it is apparent that harm may be done to the complainant's ·business thereby; for an inquiry addressed to such claimants might and doubtless would elicit the response, "Yes, the Heralds of Liberty paid the claim as asserted." Thus the defendant corporation might very easily appropriate to itself the goodwill which belonged to the complainant by reason of the favorable showing of results in the matter of claims and their payment by the complainant. In conjunction with such activities as the foregoing, which in themselves are sufficient to convince me that the defendant corporation was organized for the purpose of parasitically attaching itself to the goodwill which inheres in the complainant's alias, the Heralds of Liberty, the defendant company through its officers appears to have been actively engaged at the same time in an attempt to detach the complainant from what advantage it may enjoy from the name Heralds of Liberty by circulating unfair, and in some respects untrue, statements and innuendoes, which in the degree of their circulation approach, if they do nòt amount to, systematic propaganda.

The choice of its name by the incorporators of the defendant company appears to have been for the unlawful purpose of unfairly competing with the complainant in its business, and of wrongly profiting at its expense.

On the present showing a preliminary injunction will issue as prayed, except that the clause designed to prohibit the solicitation of the complainant's members to become members of the defend-

ant corporation will be so phrased as to leave.the defendant upon change of name and without any of the other unfair methods hereinbefore mentioned, free to seek to do business with all persons it may choose regardless of their membership in the complaining society.

Let an order be prepared accordingly.