AMERICAN RADIO STORES, INC., a corporation of the
State of Delaware,

*vs.*

AMERICAN RADIO & TELEVISION STORES CORPORATION,
a corporation of the State of Delaware.

*New Castle, April 4, 1930.*

*William S. Potter*, for the complainant.

*Charles C. Keedy*, for the defendant.

THE CHANCELLOR. As to the contention that the defendant is not using its name in competition with the complainant, the evidence is to the contrary. It shows that in the Philadelphia territory where the complainant has its principal office, conducts one of its stores and advertises its business, the defendant though advertising its stores as Post Radio and Standard Radio Stores, displays its corporate name in such way as to indicate that the stores are operated as a part of the defendant's business. Further also, the testimony clearly indicates that the publishing by the defendant of its name has been such that the belief has been created in the minds of some at least of the public that the defendant is the responsible manager of the stores and is conducting the business. The situation is not one where the subsidiaries with their distinctive names are alone visible to the public. The defendant by public notice has so held itself out that the belief is not unwarranted that the business conducted by the Post and Standard stores with the display of the coined word "Artsco" is after all the business of American Radio and Television Stores Corporation and is conducted by it. While in point of strict fact, the defendant is not conducting its business directly but only indirectly through its subsidiaries, yet under the evidence the public is reasonably led to the belief that the responsibility for the management of the business is the defendant's and that any one dealing with the stores in the defendant's chain is dealing with the defendant. I conclude, then, under these circumstances, that the defendant has to all practical purposes interposed itself by its own corporate name in competition with the complainant.

The next question is—does the defendant's name bear such resemblance to the complainant's name as to lead the public to confuse the identity of the two? The evidence shows that it does. It discloses that there has been some confusion of mail, the police department of Philadelphia has taxed the complainant with littering the streets with advertising circulars which bore the defendant's name, complaints have been made to the complainant of dissatisfaction with the quality of goods sold by it which were in fact sold by the defendant's subsidiary, and the complainant's credit with one supply house was withdrawn for a period of time because of the belief that the complainant had

become a part of the defendant's chain. These circumstances are enough to show that the public confuses the identities of the complainant and defendant. Where such confusion exists, it is but reasonable to expect that the complainant's trade will be adversely affected.

But damage to sales is not the only sort of injury which courts will consider in determining whether an injunction should issue against the use by a defendant of a name which confuses its identity with the complainant. In *Akron-Overland Tire Co. v. Willys-Overland Co.*, 273 *F*. 674, the Circuit Court of Appeals Third Circuit, sustained the action of the lower court (268 *F*. 151) in enjoining the defendant from using the word "Overland," notwithstanding the business of the appellant was that of selling automobile tires while that of the appellee was the manufacture and sale of automobiles, two businesses that were in no wise competitive. The court took the view that the appellee was entitled to be free from the possible danger to its reputation and credit which would result by the public's confusion of the identity of the appellant with the appellee and the consequent holding by third parties of the appellee to be accountable for the appellant's acts. A similar situation is shown to have existed in the instant case, for on at least one occasion the complainant has been rather severely taken to task by a purchaser of a radio set which was said to be inferior in quality and which had been sold not by the complainant but by the defendant. How much such adverse criticism of the quality of the complainant's articles has been engendered by the confusion of the complainant's identity with the defendant's, it is impossible to say. If some of it has been voiced to the complainant, it is not unreasonable to conclude that considerable of it has been either silently entertained or perhaps spread around amongst acquaintances. In either case the criticism is a source of injury.

*Wall v. Rolls-Royce of America*, (*C. C. A.*) 4 *F*. (2d) 333, was similar in principle to the case just cited and was to the like effect. In that case the two businesses were non-competitive. But the court said that just as the appellant could benefit by using the distinctive word in the appellee's well known and

highly honorable name, conversely the appellee could and doubt-less would be injured by having its goodwill and fair name de-tracted from by the appellant's use of the word.

It is true that in the cases just referred to the view was justified that there was an express intent on the part of the defendant to make a wrongful use of the name, and here no evidence of such express intent is shown. But evidence is dis-closed of harmful results to the complainant in fact, and it is reasonable to suppose that if results of that kind have occurred in the past they will continue into the future. Where that is the case it is not necessary for the complainant to show an express intent and design on the part of the defendant to injure the complainant's trade. *Samson Cordage Works v. Puritan Cordage Mills*, (C. C. A.) 211 F. 603, L. R. A. 1915F, 1107; *Evening Journal Ass'n. v. Jersey Publishing Co.*, 96 N. J. Eq. 54, 124 A. 767; *Hilton v. Hilton*, 90 N. J. Eq. 564, 107 A. 263; *Cape May Yacht Club v. Cape May Yacht & Country Club*, 81 N. J. Eq. 454, 86 A. 972.

Having concluded that the complainant is suffering an injury due to the use by the defendant of its corporate name, the next question is whether there is anything so peculiar to the complainant's name as to warrant a prohibition of its simulation. In other words, is the complainant's name of such character that it is the common property of all men and therefore in the absence of a showing of secondary meaning, open to use by others? In the recent case of *Standard Oilshares, Inc., v. Standard Oil Group, Inc., ante p.* 113, 150 A. 174, decided by this court a day or so ago, occasion was taken to advert to some at least of the prin-ciples that control in questions of this sort. It is not necessary now to repeat the observations there made. It is sufficient to state merely the result of the application of the principles an-nounced in that case to the one now before the court. That result is that as to the words "radio" and "stores," the com-plainant cannot complain if the defendant makes use of them in its corporate title. Those words are purely descriptive and, when used by the complainant, have attached to them no meaning of a secondary nature. But when the word "American" is used in conjunction with them, a distinguishing mark is introduced and the complainant is entitled to be protected in its use of that

distinctive feature of its name. *Shaver, et al., v. Heller & Merz Co.,* *(C. C. A.)* 108 *F.* 821, 65 *L. R. A.* 878.

Inasmuch, however, as a corporate name is now under the Delaware law to be categorized with unregistered trade-marks (*Standard Oilshares, Inc., v. Standard Oil Group, Inc., supra*) the protection to the complainant can extend only so far as is allowable under the general principles of law governing in unfair competition cases. Under those principles, trade-mark rights rest in user. As was said by the Supreme Court of the United States in *Hanover Star Milling Co. v. Metcalf,* 240 *U. S.* 403, 36 *S. Ct.* 357, 361, 60 *L. Ed.* 713, "the mark, of itself, cannot travel to markets where there is no article to wear the badge and no trader to offer the article." To the same effect is *United Drug Co. v. Rectanus,* 248 *U. S.* 90, 39 *S. Ct.* 48, 63 *L. Ed.* 141. Whether the mark would be protected in territory that would probably be reached by the prior user in the natural expansion of his trade is a proposition upon which the Supreme Court in the *Hanover Star Milling Company Case* declined to express its opinion. The proposition however has been passed upon in the case of *Sweet Sixteen Co. v. Sweet "16" Shop,* *(C. C. A.)* 15 *F.* (2d) 920, and answered in the affirmative. In that case the complainant was protected in the use of its mark in territory which it had not yet entered but which it contemplated entering and, as preparatory to extension of its trade therein, had circularized with catalogues and canvassed with extensive advertising. In *Terminal Barber Shops v. Zoberg,* *(C. C. A.)* 28 *F.* (2d) 803, the complainant was protected against imitation of its name by the defendant in territory where the complainant had no place of business but in which it advertised and drew trade.

Following the principle of the *Terminal Barber Shop Case, supra,* I conclude that the defendant should be enjoined from using as a part of its corporate name the word "American" in the territory where the complainant does business and in territory competitively contiguous thereto which is reached by the complainant's trade and solicited by the complainant's advertisements. This territory is particularly in the city of Philadelphia and vicinity. Whether the injunction should also extend over territory into which the complainant might extend its business

in the ordinary course is a question which, if pressed by the complainant, I should prefer to hear debated before deciding.

Decree accordingly, costs on the defendant.