**TOWN HALL, Inc., v. ASSOCIATED TOWN HALLS, Inc.**

No. 128.

District Court, D. Delaware.

Dec. 12, 1941.

Daniel F. Wolcott (of Southerland, Berl & Potter), of Wilmington, Del., for plaintiff.

C. Edward Duffy (of Logan & Duffy), of Wilmington, Del., for defendant.

BIGGS, Circuit Judge.

The plaintiff is a non-profit membership corporation founded in 1894 and incorporated in 1904 under the laws of New York, and until 1938 had the name "The League for Political Education, Inc.,". In 1938 this title was changed to "The Town Hall, Inc.". Since 1921, however, the plaintiff has used the phrase "Town Hall" as a means of identifying itself and its activities. The plaintiff's primary purpose has been to disseminate views on all sides of controversial public questions and thus to educate the public.[1] For six years it has broadcast a radio program entitled "America's Town Meeting of the Air" over a network reaching almost every part of this country. For the last five years the plaintiff has rendered service by mail to individuals or groups of individuals in different parts of the country helping them to organize gatherings of persons brought together to listen to "America's Town Meeting of the Air" and to discuss the subjects thus broadcast. In 1936 the plaintiff established associate memberships for these groups and in the summer of 1938 adopted the name "Town Hall Associates" as a designation of the individuals who availed themselves of such memberships. The plaintiff's president testified that there were over a thousand groups connected with the plaintiff and subscribing to its service throughout the country. He testified also

---

[1] The president of the plaintiff described its main object as follows: "To promote an enlightened citizenship and an honestly informed public opinion, through a program of lectures, discussions, radio programs, and to assist in the formation of discussion groups and Town Halls throughout the country."

that they "* * * were organized spontaneously under the impetus of the [radio] program." [2]

During the decade beginning in 1921, the plaintiff also published a magazine called the "Town Hall Crier", and in 1922 and 1923 also got out bulletins entitled "The Town Hall Bulletin". These magazines were used to publicize its aims and activities. Since 1921 the plaintiff has owned and operated a building in New York City known as "The Town Hall". The words, "Town Hall" are cut in stone upon the facade of the building and also appear on a large sign or scroll fastened to its front. Since 1921 the plaintiff has used the emblem of the scroll bearing the words "The Town Hall" as a distinctive mark upon its correspondence and literature. In March 1940 this mark was registered by the plaintiff in the Patent Office. The plaintiff has a large investment in its building and equipment and in its goodwill. It has gross assets in excess of $1,126,000 and net assets in excess of $750,000. The educational value of the work carried on by the plaintiff is not questioned by the defendant.

The defendant is a Delaware corporation incorporated in December 1938. Its corporate purposes as stated in its charter are to "* * * prepare, furnish, produce and conduct lectures, * * * and to cater to public diversion by and through * * * any other educational * * * devices;". Its incorporation was caused by Benjamin Franklin, who was its first president and apparent predecessor in the use of the name in question. In February 1937, Franklin wrote to the plaintiff and obtained one of the plaintiff's pamphlets dealing with its radio program. On this pamphlet appeared the plaintiff's distinctive scroll device bearing the words "The Town Hall". About this time Franklin listened to broadcasts of "America's Town Meeting of the Air". He caused the defendant to be incorporated a year and a half later.

In 1936 Franklin became associated with the Knife and Fork Club International and a few years later with Associated Executive Clubs, corporations engaged in the business of managing and procuring lecturers. Early in 1938 Franklin went to New York City and got a mailing address under the name "Associated Town Halls" and a telephone listing under the same name. He also filed a certificate with the clerk of New York County asserting that he was doing business under the assumed name of "Associated Town Halls".

Under all the circumstances I do not doubt that Franklin intended to give and did give the impression that the defendant was affiliated with the plaintiff or connected with the plaintiff's activities. Franklin and the defendant operated in the same general field as the plaintiff. Many speakers who had appeared at the Town Hall were engaged by the defendant to speak and did speak upon the same or similar topics. The defendant distributed a paper called "Town Hall Talk". The record shows clearly the intention of Franklin and the defendant to appropriate the name "Town Hall" and use it for their own purposes.

Franklin's activities resulted in the issuance of an injunction by the Supreme Court of New York County in March 1940. He was enjoined from further acts of unfair competition. See Town Hall, Inc., v. Benjamin Franklin, doing business as Associated Town Halls, 174 Misc. 17, 19 N.Y. S.2d 670, 671. I entertain no doubt that

[2] It should be noted that the plaintiff's president testified in this connection as follows:

"XQ. I invite your attention to this statement at the bottom of next to the last page:

" 'The Town Hall, Inc., has no branches and does not attempt to organize so-called 'Town Halls' in other cities.'

"Is that a correct exposition of your company's attitude? A. Yes.

"XQ. And that was true, in February, preceding this fall of 1939—I am reading now from Plaintiff's Exhibit No. 15, you wired Mr. Morris:

" 'The Town Hall New York does not organize discussion groups or clubs and has no field representatives.'

"That was true when you said that? A. Yes.

"XQ. And true now? A. No.

"XQ. In 1939 you were not organizing lecture groups throughout the country? A. I point out that there is a difference between organizing and encouraging the organization of. That is what we were doing. We were encouraging and advising them; but we did not want to assume responsibility for them."

It should be observed that a number of the witnesses appearing on behalf of the plaintiff testified that listening groups had sprung up throughout the country by reason of the radio broadcasts and other publicity of the plaintiff.

through the medium of the defendant Franklin has continued those objectionable acts not only in New York but throughout the United States.

■ The primary defense asserted by the defendant (which I have no doubt is in reality Franklin) is as follows: In February, 1937, the plaintiff published one of its "America's Town Meeting of the Air" pamphlets. On the inside cover of this pamphlet appeared the following: "The town hall idea is now being taken up in many cities throughout the country. There are 'town hall courses' in Detroit, Cleveland, Toledo, Chicago, Dallas, Cedar Rapids, to mention only a few; and recently one was founded in the nation's Capital. In each case the Town Hall of New York has been the model. This institution, however has no official connection with these other Town Halls, although one of its officers supervised the organization of The Town Hall of Washington".

The defendant contends that this paragraph constituted an invitation to it to create "Town Hall" groups throughout the United States which the defendant should then proceed to supply with lecturers. The invitation cannot be so construed as Justice McLaughlin points out in his opinion which I have cited supra. The invitation said Justice McLaughlin was "* * * to the public to join and become associated with the plaintiff". It cannot be construed as an invitation to appropriate the substance of the plaintiff's name and engraft thereon a lecture bureau operated for the benefit of Benjamin Franklin.

■ The other defenses which are asserted by the defendant may be disposed of summarily. The defendant asserts that the words "Town Hall" constitute a generic term which has but one meaning and which defines itself. I cannot agree with this contention. The words "Town Hall" as employed by the plaintiff have attained a clear secondary meaning associated with the educational program and activities of the plaintiff.

■ The defendant has appropriated that name for its own purposes in the same field as the plaintiff or in a field very closely related thereto. It did so with knowledge of the plaintiff's activities. There is actual confusion in the public mind between the plaintiff and the defendant caused by the defendant's acts. The presumption of fraud is present in the case at bar and

every circumstance leads to the conclusion that the presumption is correct. The relief sought by the plaintiff must be granted. Liberty Life Assur. Soc. v. Heralds of Liberty, 15 Del.Ch. 369, 138 A. 634; American Radio Stores v. American Radio & Television Stores Corporation, 17 Del.Ch. 127, 150 A. 180; Philadelphia Trust, Safe Deposit & Insurance Co. v. Philadelphia Trust Co., C.C., 123 F. 534. For a case embodying strikingly similar circumstances see National Circle, Daughters of Isabella v. National Order of Daughters of Isabella, 2 Cir., 270 F. 723, certiorari denied 255 U.S. 571, 41 S.Ct. 376, 65 L.Ed. 791.

Findings of fact and conclusions of law are filed herewith in accordance with the provisions of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

A decree may be submitted.