82 A.2d 384 (1951)
E. I. DU PONT DE NEMOURS & CO.
v.
DU PONT SAFETY RAZOR CORP.
Court of Chancery of Delaware, New Castle.
July 13, 1951.
Hugh M. Morris of Morris, Steel, Nichols & Arsht, of Wilmington, and Wilson C. Baily, of West Chester, Pa., for plaintiff.
Defendant did not appear at the final hearing.
SEITZ, Chancellor.
Plaintiff seeks to have defendant enjoined from using the word "DuPont" in its corporate *385 name and on and in connection with safety razor blades advertised and sold by it.[1]
After this case came to issue and during the discovery phases thereof, the defendant's counsel withdrew and subsequently the matter came on for the final hearing at which time only the plaintiff appeared and presented evidence.
In order to determine the relief, if any, to which plaintiff is entitled, it is first necessary to narrate the facts as I find them.
E. I. duPont De Nemours established in 1802 on the Brandywine River[2] near Wilmington, Delaware, a gunpowder manufacturing business. It was conducted by a partnership under the name of "E. I. duPont de Nemours and Company". The founder died October 31, 1834. Thereafter the business was carried on by successive partnerships under the same or substantially the same name until 1899 when it was incorporated under the name "E. I. du Pont de Nemours and Company". In 1902 the property and business of the first corporation was transferred to a successor corporation which operated until 1915 when the present plaintiff was organized and acquired the business and assets of its predecessor. Descendants of the founder, one or more of whom were partners in one or more of the several partnerships that existed between the death of the founder and the acquisition of the business by the first corporation, included the following: Alfred Victor duPont, Henry duPont, Alexis Irenee duPont, Eleuthere Irenee duPont, II, Lammot duPont, Eugene duPont, Francis G. duPont, Henry A. duPont and William duPont. Until recent years the presidents of the duPont Company were duPonts who were descendants of the founder. Directors of plaintiff during the last decade have included numerous members of the duPont family who were descendants of the founder. Other descendants have been prominent in the management of the business of plaintiff and of its predecessor corporations and partnerships.
I pause to point out that the word "duPont" both as the family name and in the plaintiff's corporate title has always apparently been spelled with a small "d". However, when the word is applied as a trade name it has from the earliest times been generally spelled with a capital "D". These differences which I have noted do not affect this decision.
Initially the business was largely confined to explosives, but in the early part of the present century the business was expanded to embrace more and substantially different fields of activity. In the last 10 years the present plaintiff has produced thousands of separate products and approximately 1,200 product lines. By the expenditures of tremendous sums of money in operational and research projects, plaintiff and its predecessors have, so far as the evidence here shows, given to their products a high standard of excellence in quality, workmanship and appearance. Plaintiff produces so many many different materials that space does not permit them to be listed.
Plaintiff does not manufacture or sell razor blades. Plaintiff suggests, however, that the toilet articles which it does produce, such as combs, cellulose sponges, toothbrushes, purse sets, complexion brushes and nail brushes are akin to razor blades, particularly at the retail level. All of these products are produced by plaintiff for sale at the retail level and bear the name "DuPont". In the period 1948 to 1950 over 29,000,000 cellulose sponges carrying "DuPont" on the wrapper were sold. In the period 1947 to 1950 over 224,000,000 other toilet articles with DuPont thereon were sold for personal use.
The many exhibits introduced into evidence by plaintiff demonstrate beyond any real doubt that plaintiff and its predecessors have used the name DuPont prominently in their advertising and sales material almost since the first partnership. The evidence also demonstrates that innumerable customers and prospective customers refer *386 to various products manufactured and sold by plaintiff as "DuPont" products.
Over 1,000 publications have been used by plaintiff for advertising purposes during the past 5 years and such advertising emphasizes "DuPont". Over 25,000,000 folders, etc. have been distributed annually during the same period playing up the name "DuPont". A coast to coast broadcast called "DuPont Cavalcade of America" is produced weekly. It is estimated that except in summer months, this broadcast has an audience of 12,000,000. Again throughout, the name DuPont is emphasized.
Plaintiff's total expense for advertising for the years 1935 to 1950 inclusive was almost $72,000,000. Plaintiff's gross sales for the year 1950 alone amounted to over $1,000,000,000. Throughout every state in the United States plaintiff and its predecessors have been generally known and called "DuPont". In the various markets plaintiff's products have been generally known and called "DuPont" products.
Defendant, a Delaware corporation, has during the period immediately prior to the bringing of this action sold and put into the channels of trade safety razor blades marked "Du Pont". The wrapper thereof is marked on one side,
 Du Pont
 Royal Blue
 Double Edge Blades
 America's Finest
and on another side,
 Du Pont Safety Razor Corp.
 Wilmington. Dela.
Defendant also put into the trade channels a container for used blades which carried thereon, inter alia, the defendant's name and Wilmington, Delaware as its address.
Plaintiff gave defendant notice before the suit was instituted that the defendant was competing unfairly with plaintiff and requested defendant to remove the name DuPont from its name, products and advertising. Defendant refused to do so. It is also admitted by defendant that no person by the name of DuPont is now or at any time has been connected with or associated with defendant.
At plaintiff's request a gentleman by the name of Phillips visited 45 stores which were listed in a St. Louis, Missouri paper as having "Du Pont Blades" on sale. He purchased defendant's blades at 38 of those stores. In answer to his inquiries concerning the manufacturer, the clerks by their answers demonstrated that there was substantial confusion in their minds as to whether the plaintiff rather than the defendant was the manufacturer of defendant's blades.
It is in evidence that stores or places of business that sell toilet articles frequently display them side by side with safety razor blades on the same shelves, show cases or counters.
In the light of these facts, is plaintiff entitled to equitable relief? Plaintiff's argument goes like this. The name DuPont has become so identified with plaintiff and its products over such a long period of time that it is entitled to have the defendant enjoined from using the name DuPont because the name is so used by defendant that it may lead purchasers and potential purchasers of defendant's product to believe it is in some way produced by or connected with plaintiff.
The limited law in this state on the subject of unfair competition is set forth in the opinion of this court in American Radio Stores, Inc. v. American Radio & Television Stores, Corp., 17 Del.Ch. 127, 150 A. 180. That case involved a request for an injunction on the ground of unfair competition. The wrongful conduct consisted in the use by the defendant of its corporate name. The name was so similar to plaintiff's that many of plaintiff's customers were confused. Also, plaintiff contended that defendant's use of its name subjected the plaintiff's good name and reputation to prejudice and injury. Defendant denied the confusion, denied that it was in competition with plaintiff and denied that plaintiff had been damaged. The court found that the defendant was using its name in competition with plaintiff and that the defendant's name bore such a resemblance to plaintiff's as to lead the public to confuse the identity of the two.
*387 The court went on to state that damage to sales is not the only sort of injury which courts will consider in determining whether an injunction should issue in this type of case. The court decided that where harmful results to plaintiff were shown by the defendant's practice, an injunction would issue without the necessity for plaintiff to show an express intent on the defendant's part to injure plaintiff's trade.
These principles have direct application to the present case.
While the defendant has been manufacturing and selling razor blades and the plaintiff has not, plaintiff does put into the market articles which are closely related to the defendant's product. The articles sold by plaintiff and defendant are often found on the same counters. But even though it be assumed that the plaintiff and defendant are not in competition, the present plaintiff, on the authority of the American Radio Stores case, is entitled to relief. This is so because where confusion exists in the minds of customers with respect to identities of the plaintiff and defendant, the plaintiff is entitled to the protection against the danger to its reputation and credit which might result were customers to hold plaintiff accountable for defendant's acts. Certainly so here where some of plaintiff's products are closely related to defendant's product. See 3 Restatement of the Laws of Torts § 730.
It is clear beyond reasonable doubt that the defendant's name bears such a resemblance to the plaintiff's name as to lead the public to confuse the identity of the two. Indeed, the evidence shows that such confusion existed in fact. And as the Chancellor said in the American Radio Stores case "Where such confusion exists, it is but reasonable to expect that the complainant's trade will be adversely affected." [17 Del.Ch. 127, 150 A. 182.]
I also conclude that the plaintiff's use of the name DuPont has acquired such a secondary meaning as a trade name that plaintiff is entitled to protection in this case. Compare The Best Foods, Inc., v. General Mills, D.C., 59 F.Supp. 201; Telechron, Inc., v. Telicon Corp., D.C., 97 F.Supp. 131; Tiffany & Co. v. Tiffany Productions, Inc., 147 Misc. 679, 264 N.Y.S. 459.
I conclude that defendant, by using the name DuPont in its corporate name, its advertising and on its product was and is using plaintiff's trade name unfairly. A permanent injunction restraining the defendant from the use of such name will be entered.
It becomes unnecessary to decide whether or not defendant entertained an express intention to compete unfairly with plaintiff.
Order on notice.
NOTES
[1] Defendant has since dissolved but under the circumstances I believe plaintiff is entitled to a decision on the merits.
[2] I make no binding determination as to whether the historic Brandywine is a river or a creek. It speaks for itself.