The AMERICAN PLAN CORPORATION,
Appellant,

v.

STATE LOAN & FINANCE
CORPORATION.

No. 15797.

United States Court of Appeals
Third Circuit.

Argued May 19, 1966.

Decided Sept. 7, 1966.

Rehearing Denied Oct. 4, 1966.

## OPINION OF THE COURT

STALEY, Chief Judge.

This appeal requires us to decide whether, under the law of Delaware, the appellant's corporate name is of such a character as to prevent the appellee's subsidiaries from adopting corporate names identical or similar to it.

The appellant, American Plan Corporation, is a service organization; it provides insurance coverage on chattels which are being purchased on installment contracts. Though appellant is not itself an insurance company, it places insurance for the benefit of the holders of commercial paper through a number of different carriers. The characteristic which appears to make appellant unique is that it offers to banks, lending institutions, and other holders of commercial paper a comprehensive plan of insurance to guaranty the security value of the chattels which are being financed through the particular institution.

Appellant incorporated in 1947 and adopted its present name in 1948. Although it services only about two hundred institutions, the American Plan Corporation has solicited or conducted business in virtually every state. It advertises in trade journals and solicits business by mail. Much of its business comes to it on the recommendation of others.

The appellee, State Loan & Finance Corporation, is a parent corporation which conducts its business through more than five hundred subsidiaries in thirty different states. These subsidiaries are engaged primarily in the small loan business. Beginning in 1958 and becoming more prevalent in the 1960's, these subsidiaries began to use the words "American Plan Corporation" as corporate names or as part of their corporate names.[1] There are presently more than

Leo H. Hirsch, Jr., New York City (Berl, Potter & Anderson, Wilmington, Del., on the brief), for appellant.

Howard L. Williams, Wilmington, Del. (Robert M. High, Morris, James, Hitchens & Williams, Wilmington, Del., on the brief), for appellee.

Before STALEY, Chief Judge, and McLAUGHLIN and SMITH, Circuit Judges.

1. As an example of the wholesale adoption of the words "American Plan Corporation" by appellee's subsidiaries, it was disclosed in the answers to interrogatories that twenty-seven subsidiaries were organized under or changed their names to "American Plan Corporation" of some geographical designation after this suit was filed. This was the basis for the district court's issuance of a preliminary injunction.

140 of these subsidiaries employing the words "American Plan Corporation" in their titles, the most common being the American Plan Corporation of a particular city.[2]

The appellant commenced this action in the district court. It seeks to permanently enjoin[3] the appellee from the use of "American Plan Corporation" in the conduct of its business and in the corporate names of its subsidiaries. The case proceeded to trial; and after the plaintiff had concluded its proof, the defendant moved under Rule 41(b) to dismiss the case on the grounds that plaintiff had established no right to relief. The court granted defendant's motion and in an oral opinion stated that plaintiff had failed to prove that its name had acquired a "secondary meaning" and that there had been no showing of likelihood of confusion, both of which were essential to its case. This appeal followed.

■ Jurisdiction exists in this case by virtue of diversity of citizenship. The conflicts rules to be applied are those of the forum state, Delaware. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties agree that in the absence of proof that the law is different in the states where the torts occurred, Delaware courts will apply Delaware law. See Federal Glass Co. v. Federal Glass Co., Inc., 104 F.Supp. 692, 693–694 (D. Del., 1952), citing E. I. duPont de Nemours & Co. v. DuPont Safety Razor Corp., 32 Del.Ch. 156, 82 A.2d 384 (1951).

We note at the outset that there has been a considerable difference of opinion between the parties as to whether Delaware law is similar to the general law of unfair competition and, in particular, the common law of trade-name infringement. Our examination of the cases cited by the parties and our own independent research have failed to reveal any significant dissimilarity between the Delaware cases and the general law as formulated by the state and federal courts. The Delaware courts have themselves been cognizant of a limited body of Delaware law in this area, E. I. duPont de Nemours & Co. v. DuPont Safety Razor Corp., 32 Del.Ch. at 159, 82 A.2d at 386, and have shown no hesitancy to look to the law of other jurisdictions. Cf., Coca-Cola Co. v. Nehi Corp., 27 Del.Ch. 318, 36 A.2d 156 (1944). The District Court of Delaware, which has decided many cases in this area, has remarked that "[a] canvass of the Delaware decisions reveals that the local courts apply the universal principles governing the law of unfair competition," Taussig v. Wellington Fund, Inc., 187 F.Supp. 179, 193 (D.C., 1960), and we have agreed, aff'd, 313 F.2d 472, 474 at n. 2 (3 Cir., 1962), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963).

■ The primary issue before us is whether the district court was correct in holding that Delaware law required the plaintiff to prove that its name had acquired a "secondary meaning." We conclude that it erred. We read the Delaware cases as holding that a plaintiff in a trade-name infringement—unfair competition case must show (1) either that its name is capable of exclusive appropriation or that its name, though not capable of exclusive appropriation, has acquired a "secondary meaning" *and* (2) that the name appropriated by the defendant is of such similarity to that of plaintiff that plaintiff's customers or potential customers are likely to confuse the two, United States Plywood Co., Inc. v. United Plywood Corp., 19 Del.Ch. 27, 161 A. 913 (1932); American Radio Stores, Inc. v. American Radio & Television Stores Corp., 17 Del.Ch. 127, 150 A. 180 (1930); Standard Oilshares, Inc. v. Standard Oil Group, Inc., 17 Del.Ch.

2. Several exhibits offered by the plaintiff at trial indicate that the geographical designation appearing after the words "American Plan Corporation" was deleted in various advertisements.

3. The complaint also states a claim for damages; however, that claim appears to have been abandoned.

113, 150 A. 174 (1930); Delaware Charter Co. v. Delaware Charter Service Co., 16 Del.Ch. 246, 144 A. 659 (1929); Drugs Consolidated, Inc. v. Drug, Inc., 16 Del.Ch. 240, 144 A. 656 (1929).

■ For public policy reasons, words which are purely descriptive or purely geographical have been held to be non-exclusive. Absent a showing of secondary meaning, no action for unfair competition may be maintained. American Radio Stores, supra; Standard Oilshares, supra;[4] see also annots., 66 A.L.R. 948, 957–958 (1930), and 115 A.L.R. 1241, 1244 (1938). Where, however, the words are arbitrary or fanciful and could be descriptive of anything, they are not descriptive at all, and the prior user is entitled to the exclusive use thereof. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 257, 36 S.Ct. 269, 60 L.Ed. 629 (1916). Stated another way: "Rights in names of corporations which are made up of fanciful non-descriptive names are based on priority of use and as between two similar corporate names, not personal or descriptive in character, the one coming into existence last must give way to the prior one." 1 Nims, Unfair Competition and Trade-Marks § 92 at 279 (4th ed.).

■ Thus, the question of whether proof of secondary meaning is necessary resolves itself into the determination of whether the name "American Plan Corporation" is geographical or descriptive or fanciful or arbitrary. The specific issue before us has already been decided by the Delaware courts. In American Radio Stores, Inc. v. American Radio & Television Stores Corp., supra, the Court of Chancery stated:

"* * * [T]he words 'radio' and 'stores,' *. * * are purely de-

scriptive and, when used by the complainant, have attached to them no meaning of a secondary nature. But when the word 'American' is used in conjunction with them, a distinguishing mark is introduced and the complainant is entitled to be protected in its use of that distinctive feature of its name." 17 Del.Ch. at 131, 150 A. at 183.

Similar results in the use of the term "American" were reached in Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., supra ("American Girl" shoes), and Dennison Mfg. Co. v. Thomas Mfg. Co., 94 F. 651, 653 (D.Del., 1899) ("American Express" sealing wax). With regard to our earlier statement that Delaware follows the general law, it should be noted that the American Radio case goes even further than the general law in holding that an exclusive right may be established in a name which is a combination of the words "American" and the goods in which plaintiff deals. Compare Shaver v. Heller & Merz Co., 108 F. 821 (C.C.A. 8, 1901). With these precedents before us, we are compelled to conclude that appellant has an exclusive right to the use of the words "American Plan Corporation" and that proof of secondary meaning is unnecessary. Compare American Products Co. v. American Products Co., 42 F. 2d 488 (E.D.Mich., 1930).

■ The second and equally vital question is whether plaintiff presented sufficient evidence of likelihood of confusion in order to prevail. The district court found that it had not; and since this case was decided on a motion for judgment under Rule 41(b), the facts as found must be accepted unless "clearly erroneous." See O'Brien v. Westinghouse Electric Corp., 293 F.2d 1 (C.A.3, 1961), and the 1963 amendments to Rule

---

4. In the Standard Oilshares case, the Delaware court stated:

"* * * Names that are descriptive of articles, things or occupations, names that are purely geographical, are names that are the common property of all men, and the law will not recognize the right in any individual, except under unusual circumstances, to appropriate [them] unto

himself * * *. The unusual circumstance that works an exception to this general rule consists in the fact that by public acquiescence the complainant has so appropriated the common name or descriptive term as to give it a secondary meaning identifiable with the complainant." 17 Del.Ch. at 118, 150 A. at 177.

41(b). Where the question raised, however, is whether the district court applied the correct legal standard in evaluating the evidence, the "clerly erroneous rule" has no application.

Appellant maintains that the district court improperly applied the legal yardstick of cases where the names were merely similar, when it should have applied a different standard; it contends that a less strict standard for determining likelihood of confusion should obtain in cases where the names are identical. No Delaware cases have decided this issue, nor have any Federal courts applying Delaware law decided it.[5] Considering all the cases which we have heretofore discussed, we conclude that the Delaware courts, if confronted with the issue before us, would not require a similar standard of proof.

▬▬▬ Where the names are identical or where, as here, the shortened or popular names of appellee's subsidiaries are identical to that of the complaining party, the names in themselves are evidence of likelihood of confusion. See American Steel Foundries v. Robertson, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317 (1926). The reasons for this conclusion are simple. The United Plywood and Drugs Consolidated cases state that little regard should be had for mistaken similarity in the minds of ignorant or careless people. A necessary corollary to this rule is that where a person must be unusually intelligent or cautious in seeking out the identity of a corporation which cannot be ascertained from its name, there is indeed likelihood of confusion. Coupling this determination with the evidence adduced by appellant in the district court, it is clear that it has satisfied its burden of proving likelihood of confusion.

▬▬▬ We must dispose of one further matter which was impliedly raised before the district court and before us. The parties in this case are not competitors; their businesses, however, are closely related. Plaintiff's principal complaint is that competitors of the defendant are potential purchasers of plaintiff's services and that because of the identity or similarity of names between the two, potential customers may avoid dealing with the plaintiff on the grounds that they might be aiding a competitor. This complaint is remediable in an action for trade-name infringement and unfair competition. In applying Delaware law on a previous occasion, we noted that there is a right to make one's own reputation and good will. Taussig v. Wellington Fund, Inc., 3 Cir., 313 F.2d at 478; see also E. I. duPont de Nemours & Co. v. DuPont Safety Razor Corp., 32 Del.Ch. 156, 82 A.2d 384; Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79, 82 (C.A.3, 1958), quoting from Yale Electric Corp. v. Robertson, 26 F.2d 972, 974 (C.A.2, 1928).

The judgment of the district court will be vacated, its preliminary injunction of February 9, 1965, will be reinstated, and the cause remanded [6] for disposition not inconsistent with this opinion.

5. Neither Federal Glass Co. v. Federal Glass Co., Inc., 104 F.Supp. 692 (D.Del. 1952), nor Fox Fur Co. v. Fox Fur Co., 59 F.Supp. 701 (D.Del., 1945), are relevant. The result in the Federal Glass case was dependent on defendant's offer to change its name, and the Fox Fur case turned on the misleading use of a descriptive name.

6. See United States v. United States Gypsum Co., 340 U.S. 76, 85, 71 S.Ct. 160, 95 L.Ed. 89 (1950).