**AIR REDUCTION COMPANY, Incorporated, a corporation of the State of New York, Plaintiff,**

v.

**AIRCO SUPPLY COMPANY, Incorporated, a corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware.

New Castle County.

Oct. 14, 1969.

Thomas S. Lodge, of Connolly, Bove & Lodge, Wilmington, and W. Brown Morton, Jr., of McLean, Morton & Boustead, Washington, D. C., for plaintiff.

Hugh L. Corroon, of Potter, Anderson & Corroon, Wilmington, for defendant.

MARVEL, Vice Chancellor:

Plaintiff seeks a permanent injunction against defendant's alleged infringement of plaintiff's long-established rights in the name and trademark Airco, a mark which it has registered many times and made closely guarded business use of for more than fifty years. Plaintiff has long since become known as Airco by its suppliers, customers and the public in general. The complaint specifically asks that defendant be enjoined from using the word Airco either as part of its corporate name or standing alone, contending that in its continuing unauthorized use of such word in its business, defendant is competing unfairly with plaintiff. Also prayed for in the complaint is an accounting for the gains and profits made by defendant as a result of its alleged unfair competition together with damages. However, it was made clear at trial that the parties hereto do not manufacture or sell the same products, and no precise evidence of tangible damages was proffered by plaintiff at trial, although the evidence does establish that the parties to this action do business with a number of the same customers in the aircraft and aerospace industries. Finally, plaintiff asks that defendant be ordered to cause an amendment of its certificate of incorporation to be adopted and filed with the Secretary of State of Delaware deleting therefrom the name Airco and that defendant be prevented from adopting any other name confusingly similar to Airco which might cause confusion in the public's mind concerning the various items sold in the parties' respective businesses.

Plaintiff was incorporated in 1915 and at once entered into the business of extracting oxygen and other constituent elements from the atmosphere, thereafter placing such extracts in containers for industrial and other uses. Early in its career, as made abundantly evident by the photographic exhibits of record, plaintiff became known by those dealing with it as well as by the public as Airco. In fact, such name contraction was in general use as a trademark as early as 1917. It has since been used in the course of plaintiff's business on advertising signs, often set in a so-called logotype oval frame, and in published advertising material. It is, in fact, plaintiff's testimony that the oval stamp containing the word Airco or a similar mark appears on each article manufactured and marketed by plaintiff even in the case of the one division of plaintiff's system which does not contain the name Airco in its corporate title. Recently, a more modern style and design of the trademark has been adopted but the use continues unchanged.

Over the years, plaintiff has steadily expanded its business, first into the fields of welding and acetylene cutting devices, and later into the manufacture of breathing systems for use in aircraft, hospital equipment and plastics, and more recently oil well treating devices. Plaintiff is now deeply involved in the production of requirements for space flight programs for which it supplies gases, including cyrogenics as well as carbon products, and electronic components. Its sales for 1966 were in excess of $400,000,000 or some four times its annual sales of the early 1950's. It operates through eight corporate divisions, all of which except one have in recent years carried the word Airco in their corporate names. It operates over 400 business establishments in the United States, Canada, and Western Europe, and employs some 13,500 persons.

On or about December 12, 1957, defendant, a small Texas supplier originally located in Grand Prairie was chartered in Delaware under its present corporate name. At present, it has business locations in Arlington, Texas, Phoenix, Arizona, and Atlanta, Georgia. As of the time of such incorporation, defendant acted solely as a supplier of bolts and fasteners and other like equipment, its merchandise then being principally designed for the job of fastening the interior parts of aircraft, particularly those manufactured in response to military procurement. However, defendant has merely acted and continues to act as a supplier rather than as a manufacturer except for a few specialized items which it produces in its own machine shop. When defendant was founded in 1950, it was principally engaged in selling fasteners for machine shops with emphasis on meeting the requirements of air conditioner manufacturers, the word Airco being apparently selected without regard to plaintiff's prior use.

The existence of defendant's business and its use of the word Airco came to plaintiff's knowledge during the year 1957. Later, as it moved into the aeronautic supply business, with emphasis on military requirements for aircraft interiors, defendant has become more and more associated with the aircraft world, its stationery and advertising featuring a printed jet plane next to the corporate name. And while defendant does not generally use the word Airco independently in its business dealings, nonetheless the word Airco alone is often used orally by company employees. The word Airco has also been used separately as well as in conjunction with the full corporate name on defendant's business papers as well as on advertising material. Over the years defendant's annual sales have increased from about $250,000 in 1950 to approximately $8,000,000 in 1968.

Following defendant's incorporation in 1957 and plaintiff's learning of the former's use of the word Airco, the latter promptly warned defendant of the consequences of the resulting confusion in the minds of the public as well as damage to plaintiff's long established and valuable rights which would ensue from said use were it to continue. Defendant's attorney replied to the effect that because his client was a supplier and not a manufacturer with a trademark, there seemed to be nothing for plaintiff to complain of. However, he also expressed a desire that defendant not cause confusion or injure plaintiff. Plaintiff wrote again on March 25, 1958 to the effect that it wished defendant to discontinue use of the word Airco in its corporate name, and in May defendant's attorney suggested a meeting with plaintiff's local representatives in Texas for the purpose of isolating areas of confusion; however, nothing transpired from such suggestion, such representatives not being qualified to deal with the problem at hand. In July, plaintiff's patent department manager suggested that on his return from an August trip to California that he visit Texas. As a result of such meeting defendant's counsel undertook to recommend to a group which was then under agreement to purchase its business that the word Airco in its name be changed upon payment

in full for the business. In the meantime, the use would continue over a three year period. A so-called settlement along these lines was discussed, however, no formal or informal written agreement was entered into by the parties, and the problem was then allowed to lay dormant for five years. By that time a number of instances of confusion had come to light, and plaintiff threatened suit. Defendant's position reverted to that originally taken in 1957, namely that it was merely a supplier.

In February 1966, plaintiff's patent department manager again visited defendant's premises, at which conference defendant took the position that in return for dropping Airco from its name is should be compensated in the amount of some $500,000. Plaintiff viewed this proposal as an attempt to be bought off and this suit followed after defendant's attorney failed to meet with plaintiff's Washington trial counsel in Washington to discuss a proposal that the parties' differences be settled by an agreement to divide the actual cost of defendant's adoption of a new corporate name.

■■ While descriptive words generally speaking may not be appropriate as trademarks, when a distinguishing and apt feature is introduced into a name and thereafter used, a person seeking protection from use of the same or similar distinguishing feature is entitled to be protected by injunction, at least in the area of a plaintiff's user. Furthermore, a plaintiff, to be granted relief, need not show an express intent or design on the part of the defendant to injure, American Radio Stores, Inc. v. American Radio & Television Stores, Inc., 17 Del.Ch. 127, 150 A. 180, and it is not necessary to show that the borrower of the name has tarnished it or diverted sales, Yale Electric Corp. v. Robertson (CA2) 26 F.2d 972. On these basic premises plaintiff's right to relief here must be tested unless it has acquiesced in defendant's user, Manhattan Shirt Co. v. Sarnoff-Irving Hat Stores, 19 Del.Ch. 151, 164

A. 246, rehearing denied, 19 Del.Ch. 242, 165 A. 570.

While plaintiff's business is carried on on a scale vastly greater than that of defendant's, there have obviously been a number of instances in recent years in which inquiries and orders intended for plaintiff have been misdirected to defendant and vice versa. And although customers of both parties can be said to be sophisticated, nonetheless, they have in a number of instances confused the two companies, although some minor confusion is obviously attributable to negligence on the part of local postal and telephone employees. However, as noted above, notwithstanding the inconvenience, embarrassment, and confusion attributable to the resulting delays in filling of orders, meeting of payrolls, and the concomitant creation of an aura of inefficiency arising therefrom, no specific loss of business attributable to defendant's use of the word Airco in the conduct of its business has been proved by plaintiff.

Turning to actual instances of confusion, it appears that both parties maintained establishments in Atlanta, Georgia, from 1956 until 1963. During this period a number of examples of confusion between the identity of the two companies occurred in the form of wrongly delivered mail and wrongly placed phone calls. The same type of confusion has also occurred in the Dallas-Fort Worth area, where both parties continue to maintain offices. In addition, plaintiff at trial established instances of confusion of identity of the appropriate supplier of customer orders not only originating in the two areas above mentioned but as well in New York, Chicago and elsewhere, including one request for a quotation of price for a bronze welding rod sent to Airco Supply by the representative of the Government of Israel in 1966, which should, of course, have gone to plaintiff. In short, this is not a case in which there is no evidence of confusion in fact as between the parties to this litigation,

Drugs Consolidated, Inc. v. Drug Incorporation, 16 Del.Ch. 240, 144 A. 656, and the fact that the customers themselves did not testify is not significant. The documents involved speak for themselves.

While I do not believe that defendant, in adopting the name Airco as part of its corporate title, intended to compete unfairly with plaintiff, the point is that defendant has, as its business has grown, by use in its advertising of a name and trademark which has for fifty years been a basic part of plaintiff's business, occasioned numerous instances of customer confusion unfavorable to plaintiff's interest. In recently exhibiting at the Paris Air Show, defendant has demonstrated to the world of aeronautics that its use of the word Airco is no longer a local matter with minimal contact with plaintiff's business.

In short, I am satisfied on the basis of the evidence of record that if plaintiff's rights in its name and trademark are not protected by court order that instances of business confusion will continue to grow, American Radio Stores, Inc. v. American Radio & Television Store Corporation, supra. And while plaintiff and defendant do not manufacture the same products, they both use the word Airco, and this use coupled with the fact that both sell goods, which, strictly speaking, do not compete with each other, but which, nonetheless, are sold to the same customers in the aircraft and aerospace industries, has led to confusion on the part of customers. This situation must inevitably lead to further confusion of identity. As stated in E. I. DuPont De Nemours and Co. v. DuPont Safety Razor Corporation, 32 Del.Ch. 156, 82 A.2d 384:

"Plaintiff is entitled to the protection against the danger to its reputation and credit which might result were customers to hold plaintiff accountable for defendant's acts.

Certainly so here where some of plaintiff's products are closely related to defendant's product. See 3 Restatement of the Laws of Torts § 730.

It is clear beyond reasonable doubt that the defendant's name bears such a resemblance to the plaintiff's name as to lead the public to confuse the identity of the two. Indeed, the evidence shows that such confusion existed in fact. And as the Chancellor said in the American Radio Stores case

'Where such confusion exists, it is but reasonable to expect that the complainant's trade will be adversely affected.' [17 Del.Ch. 127, 150 A. 182.]"

■ Next, it is not necessary, in establishing a right to injunctive relief in a case such as this, to require proof of palming off of defendant's products as plaintiff's. In any event, despite charges, such fraud is not established of record. Accordingly, unfair competition of this sort, alluded to in Liberty Life Assurance Society v. Heralds of Liberty, 15 Del.Ch. 369, 138 A. 634, Standard Oilshares v. Standard Oil Group, 17 Del.Ch. 113, 150 A. 174, Manhattan Shirt Co. v. Sarnoff-Irving Hat Stores, 19 Del.Ch. 151, 164 A. 246, rehearing denied 19 Del.Ch. 242, 165 A. 570, and Coca-Cola Co. v. Nehi Corporation, 26 Del.Ch. 140, 25 A.2d 364, is of no relevance here.

■ I conclude, however, on the basis of the facts of record that the use of the word Airco by defendant has resulted in customer confusion, and will, unless enjoined, result in more confusion on the part of customers as to the origin of the products involved, resulting in a purchaser of defendant's goods reasonably believing that he is purchasing goods of the plaintiff. Accordingly, plaintiff is now entitled to injunctive relief, as opposed to damages, on the basis of the applicable Delaware law, unless delay on its part in summoning defendant into Court has led to a forfeiture of such right.

In the case of Polaroid Corporation v. Polarad Electronics Corporation, (CA2)

287 F.2d 492, it appears that in 1945, plaintiff, by then securely established in the field of sophisticated optical devices with some interest in the field of electronics, having heard of defendant, a fledgling in electronics, and prepared a credit report, sent one of its attorneys to visit defendant's struggling business carried on in two rooms. However, no protest was thereafter made on the basis of the similarity of defendant's name to that of plaintiff's. In 1946, plaintiff noticed that defendant had advertised in a trade journal. Another credit report was drawn, but no action was taken. In October, 1951, defendant forwarded to plaintiff a letter addressed to the former inquiring about polaroid material. Plaintiff did not react and in fact took no action until 1955 when it opposed defendant's application for trademark registration, ultimately bringing suit in federal court in late 1956. Meanwhile, defendant's business was growing, from eight employees in 1945 to five hundred thirty in the year ending June 30, 1956, while annual sales had grown over the same period from $12,000 to over $6,000,000.

In short, the defendant Polarad was not only never warned of a possible law suit; in addition, plaintiff sat idly by after the year ended June 30, 1951 when defendant's sales approximated $550,000 (a result achieved by remaining within its own traditional area of electronics as opposed to plaintiff's fields of optics and photography) until late 1956 before instituting suit. The appellate court held that the trial court's judgment should be affirmed, plaintiff having waited too long to sue.

In the case at bar, however, defendant was put on notice in December, 1957 that plaintiff demanded that defendant desist from the use of the word Airco in its business, the only matter thereafter left for negotiation being just how and when defendant would adopt a new corporate name. And while plaintiff perhaps took an inordinate amount of time assembling data on instances of actual confusion resulting from the placing of orders with the wrong

company, before suing, defendant was less than candid in lulling plaintiff into believing that it intended to take such action as would be necessary to avoid confusion of name and any consequent injury to plaintiff. Furthermore, most of the instances of confusion by the parties' mutual customers were shown to have taken part after this action was filed.

 In arriving at a conclusion as to whether or not a claim is barred by laches, a court must determine whether or not a plaintiff has exhibited that degree of diligence fairly called for in the situation facing the parties, Scotton v. Wright, 13 Del.Ch. 214, 117 A. 131 aff'd Wright v. Scotton, 13 Del.Ch. 402, 121 A. 69, 31 A.L.R. 1162. I believe plaintiff having put defendant on notice and having sought to negotiate in good faith for a plan to eliminate the word Airco from defendant's corporate title, defendant may not successfully invoke the defense of laches as a means of aborting an otherwise meritorious action.

 Were there any doubt on this score, it is clear that in a case of improper use of another's trademark that while the right to damages may be barred by laches, the same facts will not necessarily avail to deprive a plaintiff of his right to an injunction against further infringement, Scotton v. Wright, supra, Sears Roebuck and Co. v. Allstates Trailer Rental, Inc. (D.C. Md.) 188 F.Supp. 170, and Callman, Unfair Competition and Trademarks 2nd Ed. Vol. 4, § 87.3(b). I consider the application of such principle here appropriate because I am satisfied that there is an increasing likelihood that defendant's supplies will be mistakenly believed to be plaintiff's product and vice versa, as well as a likelihood that plaintiff will expand further into the business of aircraft and aerospace supplies in which there is evidence that both parties already have confused customers in common. In addition, plaintiff has what is known as a strong trademark, which, in its modern form, is very similar to the lettering of the word Airco as used by defendant. In

fact, the very strength of plaintiff's long established rights in the word Airco, viewed in the light of the applicable law, makes defendant's claim of a right to use the word prominently almost presumptuous. There has already been substantial actual confusion, as noted earlier in the opinion, which confusion will surely increase as time goes on. Had defendant initially demonstrated a good faith desire to weigh the strength of plaintiff's trademark when it was first warned in 1957, the present consequences would have no doubt been avoided. Defendant had no reason to believe that plaintiff's claimed right was worthless or had been abandoned, or that because of changed conditions it would be considered unjust for plaintiff to invoke such right, Callman, Unfair Competition and Trademarks, 2nd Ed. Vol. 4, § 87.3(a).

Finally, defendant's effort to show substantial third party usage of the word Airco by introducing into evidence a number of sheets from telephone directories carries little, if any, probative weight. A telephone listing alone does not mean that a viable business threatening plaintiff's trademark is in fact being operated. On the contrary, plaintiff's evidence in rebuttal indicates the contrary. In any event, when a trademark or trade name has been firmly established, as here, defendant's wrong cannot be condoned merely because others may also be committing a possible wrong against plaintiff. See Bond Stores v. Bond Stores (CA3) 104 F.2d 124, and Sears Roebuck and Co. v. Allstates Trailer Rental, Inc., supra.

On notice, an appropriate order may be presented granting plaintiff a permanent injunction as prayed for but giving defendant a reasonable time to change over to a new corporate name.